THOMAS PHILLIPS *et al.*, plaintiffs in error, *v.* GILES C. DANA, defendant in error.

*Error to Peoria.*

When an execution is returned to the clerk's office, it is *functus officio*, and the sheriff, by repossessing himself of it, does not thereby revive its validity, or obtain any authority.

It has been for a long time the settled doctrine, that if an officer levies an execution, before its expiration, he may complete the sale, as well after as before the return day of the writ. It is the duty of the officer, when he has made the levy, whatever becomes of the execution, to go on with the sale, and bring the money into Court.

A *venditioni exponas* confers no new authority upon the officer; it only compels him to do what it was his duty to do before.

Where an officer levied an execution on real estate, on the return day, and returned the writ into the clerk's office, and afterwards took it out of the office, and received from the defendant the amount of the judgment, and endorsed on the execution a satisfaction thereof: *Held*, that the officer had authority to receive the money, and satisfy the execution.

THIS was an action of *debt* on an appeal bond, by the defendant in error against the plaintiffs in error, in the Peoria Circuit Court. The declaration makes profert of the bond, and alleges that the defendants made their bond in the penal sum of $1000, conditioned that Phillips should prosecute an appeal with effect to the Supreme Court, from a judgment of the Circuit Court of Peoria county against Phillips; and it assigns for breach, that he did not prosecute the appeal with effect, but the judgment was affirmed, and Phillips had not paid the plaintiffs the judgment.

The defendants filed five pleas, to which issues were taken. The first is *nil debet*, and issue to the country; the second, that an execution issued against Phillips, and was delivered to the sheriff of Peoria county, on September 18, 1839, and on December 17, 1839, the return day, levied on land of Phillips sufficient to satisfy it. On December 18, Phillips paid the amount of the execution to the sheriff, who returned it fully satisfied.

Phillips *et al. v.* Dana.

The replication to the second plea admits the issuing and delivery of the execution, and levying of it on the land; but alleges that the execution was returned to the clerk's office, and the sheriff received the money after the lifetime of the execution had expired, and it had been returned to the clerk's office, and he had never paid over the money. The defendant rejoined that the execution was in the hands of the sheriff when the money was paid, and Phillips, the defendant in the execution, had no knowledge that it had been returned.

The third plea states that the execution issued, and was levied on land of Phillips, the defendant, sufficient to satisfy the execution, but the land was not sold for want of time. There was a demurrer to the third plea, which was sustained.

The fourth plea alleges that on December 18, 1839, Phillips, the defendant, paid the whole amount of the judgment to the sheriff, who then had the execution. The plaintiff replied that Phillips did not pay, and issue was taken to the country.

The fifth plea states that the said execution was issued and levied on land; and on December 18, Phillips, the defendant, paid the whole amount to the sheriff. The replication denies the payment.

The bill of exceptions shows, that the execution issued on said judgment against Phillips, on September 18, 1839, and was delivered to the sheriff; that on December 17, the sheriff levied it on land of Phillips, and on the same day he returned it to the clerk's office; that on December 18, 1839, he took the execution from the clerk's office, and Hunt, as agent of Phillips, paid over the money to the sheriff, who returned the same satisfied. There was no evidence that Hunt or Phillips knew that the execution had been returned.

The cause was tried by the Court, the Hon. Thomas Ford presiding, without the intervention of a jury, at the April term, 1842, and judgment rendered for the plaintiff for $1000 debt, and $436.-65 damages; the judgment to be discharged upon the payment of the damages and costs.

The cause was brought to this Court by writ of error, and the several decisions of the Court below were assigned for error.

O. PETERS, for the plaintiffs in error:

The payment of the money, though it was paid one day after the return day, was a good payment, and discharged the judgment. It is questionable, perhaps, whether this would have been a good payment, if no levy had been made during the lifetime of the execution; but the case shows that the sheriff levied upon the defendant's real estate during the lifetime of the execution.

The levy being made, the officer could sell at any time thereafter, after the return day. He seized or levied by virtue of the exe-

Phillips *et al. v.* Dana.

cution, it being in full life and force ;- he would afterwards sell by virtue of seizure.

The defendant in error contends that all power of the officer ceased with the life of the execution; but not one of the authorities cited sustain the position assumed ; they only establish this, that when the levy and sale are both made after the return day, the acts of the officer are unauthorized and void.

In the case of Devoe v. Elliott, 2 Caines Cas. 243, the property was acquired and the levy and sale both made after the return day ; but the Court assume that the sale might be made after return day, if a levy had been made before.

Aitkenhead v. Blades, 5 Taunt. 198, 1 Eng. Com. Law R. 76, only decides that continuing in possession improperly under a *fi. fa.*, makes the officer a trespasser.

Winterbourne v. Morgan, 11 East 401, was a case of distress, and the defendant was made liable by operation of the statute, and the case is not at all analagous to this.

Catlin v. Jackson, 8 Johns. 520, only settles that a seizure under a *fi. fa.*, does not divest the debtor of his estate. So also *ex parte* Penn. Iron Co., 7 Cowen 540.

The cases cited from Breese 290, and Appendix 15, are not analagous ; the first decides that the lien created by one execution does not continue to another execution, issued upon the same judgment, and the other, merely fixing a rule of evidence as to the admissibility of a sheriff's deed.

It is well settled, that a sale may be made after return day, if the levy is made before. In Prescott v. Wright, 6 Mass. 20, the Court assumes this to be the law, and expressly decides it may be done.

In Vail v. Lewis, 4 Johns. 453, the Court says, the service must be made before the execution expires, but the sale may be made afterwards.

It was the doctrine of the common law, that a sale of chattels on a *fi. fa.* could well be made after the return day, if the seizure was made before. This is not denied, but admitted by the counsel for the defendant; and a distinction is attempted to be drawn between a levy on lands and on chattels ; but the authorities do not authorize the distinction. Welsh v. Jay, 1 Pick. 484 ; Prescott v. Pettee *et al.*, 3 Pick. 331, which show that sale may be made after return day, if service be commenced before.

The Supreme Court of the United States, in the case of Wheaton v. Sexton, 4 Wheat. 503 ; 4 Peters' Cond. R. 520, expresses surprise that a contrary doctrine should ever have been contended for. It was ejectment, and the title depended on such a sale, and it was held good.

This has been the common practice in this State. Many titles depend upon the legality of such a proceeding, which will be overturned if a different rule should be adopted.

Nor is this rule of the common law altered by our statute. Pratice Act, §§ 29—31. This is merely directory, but does not in any way impair the rights of the parties. It only gives a more summary remedy for neglecting to return. Ingersol *v.* Sawyer *ut supra.*; Emerson *v.* Towle, 5 Greenl. 197.

The statutes of Maine and Massachusetts direct a return of the execution, and yet if it is returned at any time, it is sufficient, or if it is not returned at all. Clark *v.* Foxcroft, 6 Greenl. 299.

It is not necessary in this case to determine what constitutes a levy, or what estate passes by it; it is sufficient that the case finds a levy was made during the life of the execution.

If, then, the officer could legally proceed to sell the land after the return day, to make the money therefrom, it needs no argument to show that he would be authorized to receive the money from the defendant, in discharge of the execution; and the counsel on the other side admit the conclusion, if the premises are correct.

2. To avoid this conclusion, it is contended that the execution, by being returned into the clerk's office, had become *functus officio.* This objection cannot prevail, unless it is also made to appear that the defendant, or Hunt, his agent, knew this when the money was paid. The officer might have made himself liable, perhaps, for levying an execution after it had been returned; yet if he had obtained it from the clerk, and used it as if it had not been returned, every thing done under, as to all ignorant of the fact, would be as valid as if it had always remained in his possession. A sale or payment under it would be good.

The case of Knowlton *v.* Bartlett, 1 Pick. 272, is much like the present. Bryant undoubtedly held himself out as authorized to receive the money; it is not pretended that Hunt or Phillips knew the execution had been returned. Bryant was guilty of a fraud perhaps, but the law is not so unjust as to make innocent persons suffer, who were acting in good faith by paying over money to one apparently authorized to receive it.

3. The levy upon the real estate of Phillips was a satisfaction of the execution, at least *sub modo,* so as to operate as a satisfaction until a sale had actually taken place.

At common law a *fieri facias* could only be levied on chattels, and a levy operated as a satisfaction, even though the sheriff squandered and wasted the property. This is admitted to be the principle of the common law. Our writ of execution, or *fi. fa.*, is substantially like the *fi. fa.* at common law, though, by our statute, it has, with us, an extended operation. Our statute subjects lands to a levy on a *fi. fa.*, as well as chattels. It would seem, therefore, that the same effect should be given to it in its extended operation. Some of the American courts have said, that a levy on real estate is no satisfaction, but most of these are *obiter dicta.* The English decisions are uniform in holding that a levy on real estate is no satisfaction; but the rule there results from the nature of the estate,

or interest in the land which is taken. Here the land itself is taken, and the estate itself passes by the levy, sale, and sheriff's deed; there, the rents, issues, and profits only were taken; this was so in the case of a *levari facias.* The writ had only a future operation; the title was not put in abeyance by the seizure; the seizure was not followed by a sale, or by any act that changed the title; neither the officer nor the creditor took anything by the levy. The most that can be said of it is, that, by the levy, he obtained a right to take future crops, rents, &c., growing, or accruing out of the land. Thus the reason for the distinction between a levy upon chattels, and upon lands, in England, is manifest. Our statute having subjected lands to seizure and sale upon *fi. fa.,* there can be given no good reason why the rules applicable to one, should not be applicable to the other.

But, it is said, that the officer, by his levy on chattels, acquires a special property in them. This is true, so far as possession gives him a title. By the seizure, the chattels are put in the custody of the law, and the officer is its organ; but all the property, or title he has, is merely possessory, which he has for the benefit of the creditor; the title remains in the debtor, after the levy, as well as before, for all purposes, except the remedy. " The most that can be said is, the property is on its way to be sold." *Ex parte* Foster, 5 Law Rep., and cases there cited by Story, Justice.

Real estate is equally in the custody of the law after the levy. No actual possession, it is true, is taken by the officer; yet, when the levy is completed, and the sale and conveyance made, the title of the purchaser relates back to the commencement of the levy, at least so far as to cut off intervening incumbrances. In both cases the whole title passes to the purchaser by a sale, and in both the whole title is vested in the debtor by a discharge of the judgment by him, without any act, or conveyance whatsoever by the officer.

The possession by the officer of chattels levied on, is only allowed for his protection, and for the sake of the remedy. It results from the moveable character of the property. Real estate cannot be eloigned, and therefore possession is not necessary. And possession of personal property need not be taken, when it is of such a character that it cannot be removed, as in case of a building placed upon the land of another. Williams *et al. v.* Ashmun *et al.,* 8 Pick. 402. In whatever view this subject is considered, it is not easy to see, why, if a levy on personal estate operates as a discharge of the execution, a levy on land should not have the same effect.

E. N. POWELL and W. F. BRYAN, for the defendant in error:

Although it is true that where goods sufficient to satisfy a judgment are seized on *fi. fa.,* the debtor is discharged, even if the sheriff wastes them, or misapplies the money, or does not return the execution; Hoyt *v.* Hudson, 12 Johns. 208; Wood *v.* Terry, 6 Wend. 562; Jackson *v.* Brown, 7 Cowen 21; 4 Cowen 417; yet a

levy upon lands does not discharge the debtor, because the sheriff does not, as in the case of chattels, take possession of lands. Nor is the defendant divested of his title, or possession, as in the case of chattels, until the time for redemption has expired, and a deed executed. Ladd *v.* Blunt, 4 Mass. 402 ; Catlin *v.* Jackson, 8 Johns. 545 ; Shepherd *v.* Rowe, 14 Wend. 260 ; *ex parte* Penn. Iron Co. 7 Cowen 540. The case referred to above, in 14 Wend., is particularly strong and decisive of this point.

The sheriff is a mere ministerial officer, and derives his whole authority to seize property and receive money in satisfaction of judgments, as an officer, from the writs directed to him to execute, and in his hands at the time. Glancy's lessee *v.* Jones, cited 1 Smith's Pa. Laws 65–6, note ; 4 Yates 212.

The authority delegated to the sheriff by an execution is a limited authority, and, except in some cases, ceases with the expiration, or after the return day thereof. Devoe *v.* Elliott, 2 Caines Cas. 243; Vail *v.* Lewis, 4 Johns. 450 ; 5 Taunt. 198 ; 11 East 395 ; 6 Mass. 22–3. The excepted cases, in which the virtue of a *fi. fa.* appears to be extended beyond the return day, and when it continues in the hands of the officer, appear to be exclusively those in which a levy has been made, before the return day, upon personal property, when a sale may be made afterwards, and the proceeds may be applied in satisfaction of the execution. Devoe *v.* Elliott, 2 Caines Cas. 243 ; Prescott *v.* Wright, 6 Mass. 20. This is the common law doctrine, and appears to have been adopted in some of our sister states. It has been questioned, however, by high authority, whether, under our laws and practice, an execution can, in any case, be prolonged beyond the period of ninety days. Both reason and authority show that this doctrine is, and ought to be, confined to executions against personal property. It is well known that the common law *fi. fa.* applied only to chattels. Bingham on Ex. 108 ; Watson on Sheriff 148. Also that lands could not be sold under execution at common law. Watson 161– 2 ; Bingham 102–3, 108, 113, 116, 167. All the English decisions, therefore, respecting sales under execution, and the authority of a sheriff by virtue of a *fi. fa.*, have reference to executions against chattels. By a levy upon personal property, the sheriff acquires a special property in them, and may maintain trover or trespass, for converting or injuring them. Catlin *v.* Jackson, 8 Johns. 547.

All executions are made returnable within ninety days after date. It is made the duty of sheriffs to "execute and return" all writs, &c., under pain of contempt. Gale's Stat. 653. By section 30, of the practice act, Gale's Stat. 535, a mode of proceeding is prescribed, for the purpose of compelling a return of an execution, or on a failure to do so, of punishing the sheriff for contempt. Beaird *v.* Foreman, 1 Scam. 40. And by section 31, of same act, the clerk is required to enter in a book, to be kept for the purpose, the return

of the sheriff of all executions, within thirty days, under a penalty.

If the writ, upon which the sheriff received the money, expired on the 17th day of December, and the money was not paid until the 18th day, it matters not, in this view of the case, whether it had been returned or not. For being *functus officio* before the payment, it could give no authority whatever to the sheriff to receive the money. Garner *v.* Willis, Breese 291; Hargrave *v.* Penrod, Breese's Appendix 15. And if the writ was dead at the time of payment, the money was paid without authority of law, to a person wholly unauthorized; and, although paid to a person who was then acting as sheriff, yet, having no authority to receive payment in this case, the money of defendants was not paid to him (in the language of plaintiff's replication,) " as sheriff."

But the sheriff had, in this case, voluntarily surrendered the authority delegated to him by the writ, by returning it into the clerk's office. The writ had become a record of the Court before payment of the money, and was, therefore, beyond the power of the sheriff. 1 Stark. Ev. 188, 194, 282.

At common law, when a *fi. fa.* was returned with a levy on chattels, and that they remained unsold, for want of buyers, the books say that it was necessary to issue a *venditioni exponas*, to authorize a sale of them. Bingham on Ex. 262–3. And if the sheriff could not, in such case, sell the goods without a new writ, he could not receive money in payment of a returned execution. It had, by the return, become a record of the Court, and should have been just as much out of his power as any other record.

J. YOUNG SCAMMON also argued for the defendant in error.

CATON, Justice, delivered the opinion of the Court:

In this case several errors have been assigned for the reversal of the judgment; but the only one which we deem it necessary to examine, in the decision of the case, is the fourth. The question arising under this assignment of error, is whether the facts proved on the trial, as presented in the bill of exceptions, show a satisfaction of the judgment of Dana against Phillips or not. It appears that an execution was issued on that judgment, which was put into the hands of the sheriff, who, on the return day, levied it on certain real estate of the defendant, and on the same day returned it to the clerk's office, with an endorsement of the levy, and that he had not sold for want of time. The next day the sheriff went to the clerk's office, and got the execution, and while he thus had it, Hunt, the agent of Phillips, paid the amount of the debt to the sheriff, who again returned the execution to the clerk's office, satisfied. By the first return of the execution into the clerk's office, it became *functus officio*, and the sheriff, by repossessing himself of it, did not revive its vitality; and therefore he could legally do nothing with it which he could not have done without it. The enquiry then ne-

cessarily arises, whether the officer, after he had commenced the execution of the process, by levying on the property of the defendant, and without sale, returning it, could go on and complete the execution of the mandate of the writ, by selling the land, without any further order or authority from the Court; for I presume it will not be denied, that if he could sell the land, and thus raise the money, he not only had authority, but it was his duty to receive the money when tendered to him in discharge of the land, and satisfaction of the debt. It would indeed be a ceremony worse than idle, to require a sale of the land to satisfy the debt, when that object could be attained directly, by receiving the money from the defendant.

It has been for a long time the settled doctrine, that if the officer levies before the expiration of the execution, he may complete the sale as well after as before the return day of the writ. But it was contended, that to do this, he must retain the writ, for if he return it, he can proceed no further without a *venditioni exponas.* But this is a mistake. It is the duty of the officer, when once he has made the levy, no matter what becomes of the execution, to go on with the sale, and bring the money into Court. The *venditioni exponas* confers upon the officer no new authority; it only compels him to do that which it was his duty to do. (1) To obtain this process, no further action of the Court is necessary, for it is a writ of course, and it is the duty of the clerk to issue it at any time, in a proper case, on the application of the party. This doctrine will be found to be discussed and distinctly laid down in the case of Clerk *v.* Withers. (2) The judgment, which was for the plaintiff below, should have been for the defendants. It is therefore reversed, and judgment rendered for the defendants below, with costs.

*Judgment reversed.*