Adda Williams, Appellee, v. Walter W. Williams, Appellant.

Gen. No. 8,837.

Opinion filed January 14, 1935. Rehearing denied April 2, 1935.

LEDERER, LIVINGSTON, KAHN & ADLER, of Chicago, for appellant; SIGMUND LIVINGSTON, of counsel.

WHITMORE & WHITMORE, of Bloomington, for appellee.

MR. PRESIDING JUSTICE FULTON delivered the opinion of the court.

On February 24, 1931, Adda Williams, the appellee, filed her bill for separate maintenance against her husband, Walter W. Williams, the appellant. The bill alleged their marriage on August 21, 1924; that they continued to live together until March 22, 1930, when the appellant wilfully left and abandoned his home and took up his residence separate and apart from appellee; that no children were born of the marriage; that appellant had used intoxicating liquor to excess for more than two years, and during that time had been guilty of habitual drunkenness; that during the five years just previous to the separation, appellant regularly deposited $2,000 a month in the bank subject to her checks; that in August, 1930, the checking account was closed; that the appellant gave appellee many costly presents during their married life such as a $7,000 Packard sedan; that the separation was without any fault on her part; that in August, 1930, appellant asked her to sue for a divorce and threatened that unless she complied with such request he would cut off her credit with the merchants and no longer furnish her with the amount of money she had been accustomed to spend; that after August, 1930, appellant paid her $50 per week and paid bills for purchases she had charged to him until February, 1931, when he notified her by letter that he was sending her a check for $200, and that a like amount would be paid to her monthly as her allowance; that he would refuse to pay any further bills; that appellant was a man of great wealth and at the time of separation was drawing a salary of $50,000 a year. The bill prayed for a decree of separate maintenance and support in accordance

with the station in life in which appellee had lived as the wife of appellant, and in accordance with his ability to pay her, and also for support money *pendente lite,* and attorneys' fees.

The answer of appellant admits the marriage and denies that he wilfully abandoned the home without fault on her part; alleges that it was the reckless and extravagant expenditures of money on the part of appellee which caused him to leave the home; that he furnished appellee with a well furnished apartment, the use of an automobile and paid her bills until they became unduly large and unbearable; that the sum of $200 per month was amply sufficient to provide appellee with all the wants and comforts and necessities of life; that he had given appellee a large number of shares of stock in the Williams Oil-O-Matic Heating Corporation, and also money to buy other stocks; that appellee draws $50 per month from the United States Government under a war insurance policy on her former husband, and that there was no intent on his part to deprive appellee of ample support at all times.

Exceptions to the second and third paragraphs of appellant's answer were sustained by the court. In the second paragraph the appellant admitted the excessive use of intoxicating liquor but averred that appellee knew of his habits in that regard before and after marriage and participated and joined with appellant in the use thereof. The third paragraph alleged facts concerning prior marriages of both parties and that appellee had advised appellant in the abandonment of his former wife.

Three petitions for temporary alimony were filed, but no allowance made by the court upon the representation made by appellant that he was paying appellee the sum of $200 each and every month. On May 8, 1931, the cause was referred to the master and in the order of reference the court reserved for further con-

siteration and adjudication the question of alimony, temporary and permanent, solicitors' fees and suit money to be allowed appellee. The master in chancery filed his report to which objections were filed by the appellant, and by order of court made to stand as exceptions. Upon a hearing of the exceptions the court sustained the same in part and overruled the balance, and entered a decree of separate maintenance for appellee, from which decree appellant appeals.

The facts are not materially controverted except as to financial matters. Appellant admits that he left the family abode and lived separate and apart from appellee, due to her very large expenditures. Appellee is 50 years of age and in fairly good health. She had been married twice before her marriage to appellant. The appellant had been married once previously and was divorced. Appellee had 2,100 shares of Williams Oil-O-Matic Heating Corporation stock, which she had received either directly or indirectly from appellant. She also owned some Sears, Roebuck & Co. stock paid for by appellant, and receives $57 per month from war insurance. She lived in an apartment completely furnished which had been their home since the marriage. The appellant drew a salary of $50,000 from the Williams Oil-O-Matic Heating Corporation some years ago. In 1930 this was cut down to $24,000. In 1932 he resigned his position due to ill health and had drawn no salary since that time. Appellee introduced in evidence a trust agreement between appellant and the American State Bank, trustee, together with a schedule of bonds and stocks, deposited with the bank under said agreement, which were originally worth approximately $205,000. It was admitted that appellant owned 160,000 shares of Williams Oil-O-Matic Heating Corporation stock as well as other stocks and bonds. An analysis of the assets and liabilities of appellant as testified to by Gilbert B. Geiger, a certified public

accountant, indicates that the net worth of appellant was not to exceed $50,000. This witness also testified that the value of the bonds and stocks listed under the trust agreement had depreciated from the face value of $205,000 down to $127,000. The main provisions of the decree so far as they affect this controversy provide:

Par. B. That the appellant is to pay the sundry merchants for debts contracted by the appellee for all purchases made prior to February 13, 1931, and that the same were due and payable by him at the time of the filing of the bill of complaint.

Par. D. That appellant pay the appellee in addition to other items provided for, $350 per month as long as she has the free use of the apartment now occupied by her in the Lafayette Apartment Building together with the payment of proper upkeep thereof and of the incidental expenses of said apartment, and that in the event she should voluntarily move or be compelled to move out of said apartment, then the appellant should pay appellee the additional sum of $75 per month.

Par. E. That the appellee is entitled to and shall be permitted to retain all household goods and effects, free from hindrance or claim thereto on the appellant's part.

Par. F. That the appellee be paid the balance due her computed at the rate of $350 per month from the date of the filing of the bill to the entry of the decree, less the monthly payments made to her by appellant, and that the amount be paid her in a lump sum in lieu of temporary alimony, consideration of which was reserved by the court until final hearing.

Par. G. That the corpus of the trust which the appellant established in the American State Bank shall be held intact as security for the prompt payment by the appellant of the several amounts herein decreed to be paid by him.

Par. H. That as long as appellee occupies the apartment, the appellant was chargeable with the expense of reasonable repairs, upkeep and decoration of said apartment.

Par. I. That in addition to the other payments, defendant pay the appellee $3,600 for reasonable solicitors' fees.

It is apparent that appellant does not seriously question the correctness of the decree in awarding separate maintenance to appellee but challenges all of the provisions which provide for the payment of money to the appellee, and that the decree should be reversed because of the failure of the court to sustain each of the exceptions to the master's report.

It is first contended that the allowance of $350 per month as permanent alimony is grossly excessive and not warranted under the evidence in the record. It is true that shortly after the marriage appellee had been given almost every luxury and extravagance that money could afford. She had the benefit of a monthly deposit of $2,000 in the bank for personal and general expenses. Her husband for a number of years and down to the date of the separation drew a salary of $50,000 per year. Appellant and appellee had traveled extensively and always stopped at the most expensive hotels; appellant was the owner of 160,000 shares of stock in the Williams Oil-O-Matic Heating Corporation besides many other investments, but the depression, coming in 1930, had changed his financial standing. His salary had been reduced to $2,000 per month and his investments had suffered heavy losses. However he urges that he has been earning no salary since 1932 and that his entire net assets do not now exceed $50,000 and therefore the allowance of $350 per month in the decree is excessive. Appellant's own testimony shows however that he and his father are the owners of a controlling interest in the Williams Oil-O-Matic Heat-

ing Corporation; that in 1932, he voluntarily resigned in order to regain his health; that he traveled to Hot Springs and other similar places with a special nurse and received treatment from the best doctors in the pursuit of health; that at the time of the hearing he had partially recovered his former health but had been able to assume only part of his regular duties and that he was still under the care of a doctor. The testimony is not convincing that he is out of employment. His assets have clearly been diminished in value but the plain inference from the evidence is that at any time his health will permit he can reassume his position with the Heating Corporation controlled by himself and his father at a handsome salary. He was responsible for furnishing appellee with a most expensive living, and with the opportunity afforded under the law to make a showing at any time as to changed conditions that would warrant a modification of the decree, we do not feel that the order awarding permanent alimony of $350 per month is excessive. Objection is further made to the provision of the decree which allowed temporary alimony in a lump sum at the rate of $350 per month from the date of the filing of the bill to the date of the decree less all monthly payments made by appellant during that period. In our judgment this provision of the decree partakes too much of the character of allowing alimony in gross, which cannot be done in separate maintenance cases. *Cox v. Cox,* 192 Ill. App. 286. While in the order of reference to the master in chancery, the court reserved the question of temporary alimony for further consideration, and to be provided for upon final hearing, it appears clear that upon the first application before Judge Barry he refused to enter an order awarding temporary alimony *pendente lite* because the husband was making provision for the wife monthly, sufficient to take care of her needs until such time as a hearing on the merits of the case could be had.

It is further urged that the allowance to complainant of $3,600 for reasonable solicitors' fees was grossly excessive and not warranted by the record in this case. In fixing the reasonable amount of solicitors' fees the proper inquiry is as to what is customary for such legal services where contracts have been made with persons competent to contract. *Amberson v. Amberson,* 349 Ill. 249. The courts have held that the fee to be allowed in separate maintenance cases should be limited to preparing and trying the maintenance suit proper. *McAdams v. McAdams,* 267 Ill. App. 124. While the zeal in behalf of their client and the care given by the solicitors for appellee are commendable, the award of $3,600 for her reasonable solicitors' fees cannot be justified by the record in this case where no defense was interposed to the awarding of separate maintenance to appellee and we believe that an allowance of $2,500 for such solicitors' fees would be ample and reasonable.

Appellant further insists that the court erred in providing that the corpus of the trust fund established in the American State Bank should be held intact as security for the prompt payment by appellant of the several amounts decreed to be paid by him, relying upon a well established principle of law in divorce cases that a court of equity has no power to make a decree for alimony, a lien on personal property. *Griswold v. Griswold,* 111 Ill. App. 269; *Peck v. Peck,* 214 Ill. App. 41. However the circumstances of this case warrant the court in resorting to sequestration as a remedy to enforce obedience to a decree, and we do not believe any substantial error was committed in such provision of this decree. We do not deem the objections to the provisions of the decree requiring appellant to pay debts contracted by appellee for merchandise prior to February 13, 1931, or for the upkeep and necessary repairs of the apartment in which appel-

lee lived, or for the use of the household effects to be any abuse of the discretion or beyond the powers of a court of chancery.

After the report of the master in chancery was filed and before the argument of the exceptions thereto, appellant filed a petition to offer evidence as to the depreciation of assets. The court ruled that he would permit proof as to value of the bonds on deposit with the American State Bank but refused to reopen the case for proof on the other items prayed for in the petition. The application was made about a year after the closing of proofs before the master and we do not think it was any abuse of discretion on the part of the court to deny the petition. Neither was it error for the court to permit the filing of the supplemental bill which for the first time developed the information concerning the trust fund in the American State Bank belonging to and under the control of appellant.

The testimony is discussed by counsel for both parties in great detail and we have not attempted to discuss all of the questions raised. We are satisfied that the decree entered by the chancellor based upon the testimony taken before the master is equitable and fair except as to the allowance of the temporary alimony prior to the entry of the decree and the amount of the complainant's reasonable solicitors' fees. It is therefore the judgment of this court that the decree of the circuit court of McLean county be modified to conform to the views herein expressed and that in all other respects it be affirmed.

Affirmed in part and reversed in part with instructions to the circuit court to enter a new decree containing the modifications herein set forth.

*Affirmed in part and reversed in part with instructions,*