*In re* MARRIAGE OF SHARON ROCHFORD, Petitioner-Appellee, and MICHAEL ROCHFORD, Respondent.—(JULES M. LASER *et al.*, Intervening Petitioners-Appellants.)

First District (2nd Division)    No. 79-2136

Opinion filed December 2, 1980.

Laser, Schostok, Kolman & Frank, of Chicago (Richard G. Schoenstadt, of counsel), for appellant Jules M. Laser.

David R. Schulman and David L. Eaton, of Chicago, for appellant Carol Beth Lazarus.

Katz, Karacic & Helmin, of Chicago (Thomas J. Karacic, Kenneth A. Helmin, and T. Gregory Mieczynski, of counsel), for appellee Sharon Rochford.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

This appeal arises out of certain post-judgment petitions brought by Sharon Rochford (petitioner-appellee) against her former husband, Michael Rochford (respondent), because of the latter's failure to comply with the terms of a judgment for dissolution of marriage entered on August 11, 1978. As a result of Michael Rochford's noncompliance, the trial court found him in wilful contempt of court and appointed a sequestrator to seize Rochford's seat on the Chicago Mercantile Exchange. Before the sequestrator was appointed, both appellants, Jules M. Laser (hereinafter referred to as Laser) and Carol Beth Lazarus (hereinafter referred to as Lazarus), had obtained money judgments by confession against Michael Rochford. Laser filed a writ of execution on his judgment. Lazarus did not. After the sequestrator had sold Rochford's membership on the exchange for $255,000, Laser and Lazarus, together with other creditors of Michael Rochford not parties to this appeal, petitioned the trial court for leave to intervene in the sequestration proceedings and present their claims against the proceeds from the sale. Their petitions to intervene were granted. After a hearing, the trial court denied their claims and ordered the disbursement of the funds to satisfy the terms of the original judgment dissolving the Rochfords' marriage. From that order Laser and Lazarus have appealed. The following issues are presented for review: (1) whether either of the judgments Laser and Lazarus obtained by confession against Michael Rochford created a lien against Rochford's seat on the Chicago Mercantile Exchange or the proceeds from the sale thereof; and (2) whether Sharon Rochford's attempt to enforce the conditions of the dissolution of marriage judgment through the equitable remedies of contempt and sequestration was proper and independent of any remedies she may have had at law.

For the reasons hereinafter set forth we affirm the order of the trial court.

On August 11, 1978 the trial court entered a judgment dissolving the marriage between respondent Michael Rochford (not a party to this appeal) and petitioner-appellee Sharon Rochford. That judgment required Michael Rochford, who was then represented by Laser, to pay Sharon Rochford $3600 per month for maintenance and child support; to

assign to her his interest in a land trust holding title to their former residence free and clear of all liens except for the first mortgage; to hold her harmless from any obligation he was assuming; and to reimburse her immediately for all monies paid and all expenses incurred, including reasonable attorneys' fees, in the event she was required to pay any of the obligations assumed by Michael Rochford. Michael Rochford was also ordered to pay $9200 to the law firm of Katz, Karacic & Helmin for Sharon Rochford's attorneys' fees.

Michael Rochford did not satisfy these terms and, as a result, Sharon Rochford brought post-judgment proceedings to force him to abide by the orders entered on August 11, 1978.

On October 30, 1978, Michael Rochford was found to be in wilful contempt of court. He was again found in contempt on December 5, 1978, and January 2, 1979. Body attachments were issued against him but were never executed. On January 22, 1979, Sharon Rochford moved the trial court to enter certain temporary restraining orders to assist her in effectuating the original judgment. The principal relief requested was an order requiring Michael Rochford and/or his wholly owned "Fire Trading, Inc." to sell his seat on the Chicago Mercantile Exchange with the proceeds to be applied to the arrearages in child-support payments ($13,618), and to the satisfaction of an Internal Revenue Service levy ($55,000) on the marital home. A temporary restraining order was issued on January 22, 1979, and extended on January 30, 1979, to February 8, 1979. On January 30, 1979, the same day the restraining order was extended, Laser confessed judgment on a demand promissory note signed by Michael Rochford on August 19, 1975. The judgment was for $11,990.87, representing the unpaid balance of the original note ($8500) plus 8% interest per annum and attorney's fees. On February 5, 1979, six days after judgment was confessed on the note, Laser filed a writ of execution with the sheriff of Cook County seeking satisfaction of the judgment by levying on Michael Rochford's nonexempt property. The writ was returned, "no part satisfied," on February 24, 1979.

In response to Sharon Rochford's petitions, on February 9, 1979, the trial court entered an order retroactive to February 8, 1979 (the expiration date of the extended temporary restraining order), appointing a sequestrator, Jay A. Brown, to arrange a sale of Michael Rochford's seat on the mercantile exchange within 30 days. The court found that Michael Rochford had secreted himself from the jurisdiction of the court and that he had wilfully failed to comply with the judgment for dissolution of the marriage. With respect to the latter finding, the court recited in its order that Rochford had made collateral assignments of his interest in the land trust holding title to the marital residence to Central National Bank and Glenview State Bank; that he had not paid a $56,444.73 tax levy the

Internal Revenue Service had placed on the marital home; and that he was in arrears in child-support payments in the amount of $17,218.

After this order was entered and before the membership was sold, Lazarus obtained a judgment by confession against Michael Rochford in the amount of $4,185.17. This judgment, entered on February 23, 1979, was based on a promissory note Rochford had given Lazarus allegedly in connection with certain business transactions between them at the mercantile exchange.

On February 26, 1979 Rochford's seat on the exchange was sold by the sequestrator for $255,000. The trial court approved the sale. On April 18, 1979, Lazarus filed a petition to intervene in the sequestration proceedings. On April 24, Laser filed a similar petition. Together with other persons not parties to this appeal, Lazarus and Laser were allowed to intervene on May 2, 1979. On the same day, the trial court authorized the following distribution of the proceeds from the sale: Central National Bank received $133,865.10, for collateral assignments Rochford had made on the marital home; the Internal Revenue Service, $59,969.42, for its tax lien on the Rochford's home; and Sharon Rochford, $15,000, for arrearages in child support. The balance of $46,165.48 was deposited with the sequestrator. Neither of the appellants disputes this initial distribution.

A pretrial hearing was held to give the intervenors an opportunity to present evidence in support of their respective claims. As a result of this hearing, the court, on August 1, 1979, denied the relief sought by Laser and Lazarus and directed the sequestrator to disburse the funds as follows:

(1) Sharon Rochford, $20,210, representing the amount of support payments Michael Rochford was in arrears;

(2) The law firm of Katz, Karacic & Helmin, $16,700, for attorneys' fees in representing Sharon Rochford in her dissolution of marriage proceedings and the post-judgment actions;

(3) The sequestrator, Jay A. Brown, $3,000 for his services;

(4) The Rochford minor children, $6,255.48, to be held in trust for their benefit.

A draft order authorizing these payments was signed by the court on August 2, 1979, and the disbursements were thereafter made by the sequestrator. From that order Laser and Lazarus have appealed.

## I.

*Part A. Laser's Claim as A Judgment Lien Creditor.*

Laser argues that as a judgment lien creditor of Michael Rochford he had a claim to Rochford's seat on the exchange or at least to the proceeds from the sale superior to that of either Lazarus or Sharon Rochford. Section 10 of the statute on judgments, decrees and executions (Ill. Rev. Stat. 1977, ch. 77, par. 10 *et seq.*) states:

"All and singular the lands, tenements, his real estate, goods and chattels (except such as is by law declared to be exempt) of every person against whom any judgment has been or shall be hereafter obtained in any court, for any debt, damages, costs, or other sum of money, shall be liable to be sold upon execution, to be issued upon such judgment."

■■ A lien on the property specified in section 10 is not created by a judgment until a writ of execution on that judgment has been delivered to the sheriff or other proper officer to be executed. (Ill. Rev. Stat. 1977, ch. 77, par. 9; *Century Pipe & Supply Co. v. Empire Factors Corp.* (1958), 19 Ill. App. 2d 165, 153 N.E.2d 298.) In the case at bar Laser obtained a judgment against Michael Rochford on January 30, 1979, in the amount of $11,990.84. On February 5, 1979, Laser filed a writ of execution with the sheriff's office to satisfy his judgment. Laser thus became a judgment lien creditor of Michael Rochford on February 5, 1979. He was entitled to levy on all property of Rochford that was subject to execution. Under section 10 that property includes non-exempt lands, tenements, real estate, goods and chattels. On the date Laser obtained his lien, February 5, 1979, the sequestrator had not yet been appointed by the court and Michael Rochford was still the owner of the seat on the exchange. In evaluating Laser's claim of priority the first question which must be answered is whether Rochford's membership on the Chicago Mercantile Exchange belongs to one of the classes of property specified in the statute.

■■ The only class possibly applicable is "goods and chattels." Our supreme court, however, has consistently held that a seat or membersip on a trading exchange is not a good or chattel. (*Genslinger v. New Illinois Athletic Club* (1930), 339 Ill. 426, 440, 171 N.E.2d 514; *W. G. Press & Co. v. Fahy* (1924), 313 Ill. 262, 266, 145 N.E. 103; *Weaver v. Fisher* (1884), 110 Ill. 146, 152-53; and *Barclay v. Smith* (1883), 107 Ill. 349, 353.) These cases hold that certificates of membership on an exchange are privileges to trade and as such are not freely transferable. The lien of a judgment and of an execution is almost universally regarded as arising from the right to sell property thereunder. Where the right of sale cannot be asserted, the existence of the lien must be denied. *Lehman v. Cottrell* (1939), 298 Ill. App. 434, 440, 19 N.E.2d 111.

■■ A seat on the Chicago Mercantile Exchange is not freely transferable. The Exchange prescribes detailed rules for membership. A membership committee investigates prospective members and a majority vote of the committee is necessary to recommend an applicant to the Board of Governors. Only four negative votes out of a possible 21 are necessary to block acceptance. Under the applicable case law, the presence of these and other restrictions on the transfer of seats on the exchange compels a

conclusion that Rochford's membership does not fall within the definition of "goods and chattels" as those terms are used in section 10. For that reason the seat could not be reached by Laser's judgment lien.

Laser suggests that it is inconsistent for Sharon Rochford to argue that the seat on the exchange was a privilege to trade and not subject to a judgment lien yet was a type of property that could be sequestered. Section 42 of "An Act to regulate the practice of courts in granting equitable relief" (Ill. Rev. Stat. 1977, ch. 110, par. 392) provides for the sequestration of a person's "real and personal estate." The sequestrator's seizure of Michael Rochford's seat on the mercantile exchange was proper only if the seat is considered part of Rochford's "personal estate." Although the Illinois Supreme Court's opinion in *Barclay v. Smith* appears to indicate that a seat on a trading or commodities exchange is not personal property, its later opinion in *Weaver v. Fisher* indicates otherwise. In *Weaver* the court held that although a certificate of membership on a board of trade is not liable to be subjected to the payment of the debts of the holder of legal proceedings, nevertheless it is a type of personal property. See *Jones v. Fisher* (1886), 116 Ill. 68, 72.

■■ ■ Section 42, which provides for enforcement of equity orders, permits the sequestration of a person's "real and personal estate." The statute creating a lien for judgment creditors declares that the lien created applies to lands, tenements, real estate, "goods and chattels." "Goods and chattels" is not synonymous with "personal estate." There are two classes of personal property, tangible and intangible, and our courts have distinguished between them in determining whether a given type of personal property is subject to the lien of a judgment creditor. Whatever personal property may be described as tangible, *i.e.*, property having real physical existence, comes within the definition of "goods and chattels" as those terms are used in section 10. A lien on that type of personalty is created by the delivery of a writ of execution to the sheriff. Whatever personal property may be described as intangible, *i.e.*, property not having physical existence such as claims, interests and rights, is not a good or chattel. A lien on intangible property may be created only through the filing of a creditor's bill (Ill. Rev. Stat. 1977, ch. 110, par. 399) or by instituting proceedings to discover assets. (Ill. Rev. Stat. 1977, ch. 110, par. 73; *Crawford v. Schmitz* (1891), 139 Ill. 564, 569, 29 N.E. 40; *Mid-West National Bank v. Metcoff* (1974), 23 Ill. App. 3d 607, 611, 319 N.E.2d 336; *Bank of Broadway v. Goldblatt* (1968), 103 Ill. App. 2d 243, 247, 243 N.E.2d 501.) From the authorities cited it would appear that intangible personalty may be subject to sequestration but not to execution by a judgment lien creditor.

■■ Regardless of the characterization of Rochford's seat on the exchange, Laser maintains that his lien applies to the proceeds of the sale.

The difficulty with this argument, however, is that the proceeds were realized in a sale not by Rochford but in one by the court appointed sequestrator. When the sequestrator seized control over the seat on the exchange, Laser had the status of a judgment lien creditor only as to that property of Rochford which, under the statute, was properly subject to execution and levy. Since the membership could not be considered as a good or chattel, it was not subject to execution and Laser had a claim against it only as a judgment creditor, not as a judgment *lien* creditor. If, before Laser's writ was returned to the sheriff's office, Michael Rochford had himself sold the seat and retained the proceeds in the form of currency, then, under section 41 of the judgments act (Ill. Rev. Stat. 1977, ch. 77, par. 44), Laser's lien could have been executed against those funds. Where cash proceeds have been realized from a court ordered sale of property that was not subject to execution before it was sold, however, no lien attaches to the proceeds themselves. *Commerce Vault Co. v. Barrett* (1906), 222 Ill. 169, 176-78, 78 N.E. 47.

Even if it is assumed, *arguendo*, that the proceeds had been obtained by Rochford, Laser's lien could not have been enforced against them under the circumstances of this case. Section 8 of the judgments act provides that a lien created by service of a writ of execution expires after 90 days. (Ill. Rev. Stat. 1977, ch. 77, par. 8.) The lien may expire earlier if the writ is returned "no part satisfied" before the 90 days have elapsed. (*Phillips v. Dana* (1842), 4 Ill. 551; *Illinois Malleable Iron Co. v. Graham* (1894), 55 Ill. App. 266; *Carnahan v. People* (1878), 2 Ill. App. 630.) Here, the writ on Laser's judgment was returned "no part satisfied" on February 24, 1979, two days before the membership was sold. Although in his brief and in oral argument Laser asserts that he filed several successive writs against Rochford, in our examination of the record we find that only one writ was filed, on February 5, 1979, and that this writ was returned unsatisfied on February 24, 1979.

Laser claims, however, that the Rules of the Chicago Mercantile Exchange gave him a priority in the distribution of the proceeds from the sale of Michael Rochford's seat. Rule 110(e) states:

"No other claim against the proceeds of the sale of a membership shall be recognized and administered by the Exchange, but the creditors of the Seller of a membership not falling in the foregoing categories, may pursue other legal means of securing payment of their obligations; this shall include the enforcement of obligations arising out of the advance of funds for the purchase of a membership, or advances against the membership other than to the clearing member who last qualified the selling member, or claims of members not arising directly out of future transactions on the

Exchange, or claims growing out of transactions between partners who are members of the Exchange."

Laser represents that Michael Rochford gave him a promissory note in return for a loan to assist Rochford in purchasing a seat on the Exchange. On the basis of this, Laser claims that he was entitled to a priority in distribution under Rule 110(e). There is nothing in the record which supports Laser's representation. His claim for part of the proceeds held in the hands of the Exchange was denied by the Exchange after a full hearing. The rule relied upon by Laser simply provides that the Exchange's denial of a claim does not preclude the claimant from pursuing whatever legal remedies may be available to him.

These conclusions did not leave Laser without a remedy to enforce his judgment. Rochford's seat on the exchange may not have been a good or chattel under section 10, but it was an asset and a type of personal property that possessed an intrinsic value. Although the Illinois case law suggests that Laser could not have enforced his judgment against Rochford's seat through the equitable remedy of a creditor's bill under "An Act to regulate the practice of court in granting equitable relief" (Ill. Rev. Stat. 1977, ch. 110, par. 399; *Barclay*, at 354-55; *Press*, at 265-67; and *Genslinger*, at 440), he could have instituted proceedings to discover Rochford's assets under section 73 of the same act.

Section 73 authorizes a judgment creditor to prosecute supplementary proceedings for the purpose of examining the judgment debtor to discover nonexempt assets of the debtor and of compelling the application of nonexempt assets discovered toward the payment of the amount due under the judgment. The proceeding is commenced by serving upon the judgment debtor a citation issued by the clerk of the circuit court. When nonexempt assets of the judgment debtor are discovered, the court may by appropriate order compel the judgment debtor to deliver up, to be applied in satisfaction of the judgment, in whole or in part, money, choses in action, property or effects in his possession or control, capable of delivery and to which his title or right of possession is not substantially disputed. As a judgment creditor of Rochford, Laser could have created a lien against the membership on the exchange if he had instituted proceedings to discover Rochford's assets under section 73. He did not pursue this remedy. As a result, when Sharon Rochford moved for a contempt citation against her former husband and for the appointment of a sequestrator to seize his seat on the mercantile exchange, Laser had the status of a mere judgment creditor who had not taken any appropriate action to enforce his judgment. Laser contends, however, that even as a judgment creditor his rights were superior to those of Sharon Rochford. Together with Lazarus, Laser argues that satisfaction of a judgment

creditor takes precedence over the enforcement of Ms. Rochford's dissolution of marriage judgment. Both intervenors question the propriety of the appointment of a sequestrator to seize the membership and the final orders of distribution of the proceeds from the sale. These contentions will be addressed later in this opinion.

*Part B. Lazarus' Claim as A Judgment Lien Creditor.*

Lazarus obtained a judgment by confession against Michael Rochford on February 23, 1979 in the amount of $4,185.17. This judgment was based on a promissory note Rochford had given Lazarus allegedly in connection with transactions between them at the Chicago Mercantile Exchange. Although Lazarus failed to deliver a writ of execution on this judgment, she claims that this prerequisite to obtaining a lien on Michael Rochford's property was excused because "placement of the Writ for service was known to be futile inasmuch as Respondent [Rochford] had succeeded in secreting and hiding himself from the jurisdiction of the court and service had been rendered impossible." As a result, Lazarus claims to have obtained an "equitable lien" against the proceeds of the sale of the seat.

■■ Lazarus' claim that she has the status of a judgment lien creditor lacks merit. Under the statute (Ill. Rev. Stat. 1977, ch. 77, par. 9), a judgment does not become a lien on the "goods and chattels of the person against whom it is issued, until it is delivered to the sheriff or other proper officer to be executed. * * * " Here, Lazarus admits that she never served a writ but attempts to excuse this omission on the ground that service was futile because Rochford had secreted himself. The statute, however, is quite clear on the method by which a judgment may become a lien. Lazarus did not comply with the requirement of service of a writ and, therefore, has the status of a mere judgment creditor. Assuming, *arguendo*, that she had obtained a judgment lien, her lien, for the reasons expressed in Part A above, would not have attached to Rochford's seat on the exchange which had not yet been sold by the sequestrator when Lazarus' judgment was entered.

The foregoing analysis suggests that with respect to Michael Rochford's seat on the mercantile exchange or the proceeds from its sale, both Lazarus and Laser were judgment creditors, not lien creditors, when the trial court appointed a sequestrator to seize the seat.

## II.

As previously indicated, both intervening petitioners have argued that even if they are considered mere judgment creditors of Michael Rochford, nevertheless the trial court erred in not satisfying their claims before it enforced Sharon Rochford's dissolution of marriage judgment. In evaluating this argument we must turn first to a brief consideration of

the nature of a sequestration order and the propriety of its use in the instant case.

Sequestration of a person's "real and personal estate" is an equitable remedy provided for in "An Act to regulate the practice of courts in granting equitable relief" to enforce an order. (Ill. Rev. Stat. 1977, ch. 110, par. 392.) And section 511 of the Marriage and Dissolution of Marriage Act states that a judgment of dissolution "may be enforced or modified by order of court pursuant to petition." (Ill. Rev. Stat. 1977, ch. 40, par. 511.) The Historical and Practice Notes to this section specifically mention sequestration proceedings as one of the available enforcement techniques.

■■ In the case at bar the need for sequestration was obvious. Michael Rochford began to default on his child-support payments one month after the order dissolving his marriage to Sharon Rochford was entered. One condition of the order was that he assign to Ms. Rochford his interest in the land trust holding title to the marital residence free and clear of all liens and assignments except for the first mortgage. Rochford expressly stated that there were no Internal Revenue Service liens on the property and no assignments. Contrary to these representations, however, the IRS had filed a tax levy against the marital home in the amount of almost $60,000. And Rochford had made substantial collateral assignments of his interest in the trust to Central National Bank and Glenview State Bank. He also failed to comply with the trial court's order to pay Sharon Rochford's attorneys' fees for representing her in the dissolution of marriage. Three times the trial court found Michael Rochford to be in wilful contempt of court. Twice it issued body attachments for his arrest. The pleadings and affidavits filed in support of the petition for the appointment of a sequestrator indicate that Rochford had threatened to sell his seat on the mercantile exchange, take the proceeds and leave the jurisdiction. Under these circumstances, the appointment of a sequestrator on February 8, 1979, to seize the seat on the exchange and thereby enforce the provisions of the orders entered August 11, 1978, would, in our opinion, appear to have been entirely proper.

Having affirmed the propriety of the appointment of a sequestrator, we now consider the specific orders of distribution made on August 2, 1979.[1]

---

[1] We note that neither Laser nor Lazarus challenges the trial court's approval of the first disbursement of proceeds by the sequestrator. Almost $60,000 of the funds were paid to the Internal Revenue Service which had obtained a tax lien on the Rochford marital residence. Although the payment of this lien went directly to the IRS, the satisfaction of the lien enforced one of the terms of the dissolution of marriage judgment. Neither intervenor challenges this. Another $133,865 was paid to the Central National Bank to release collateral assignments Rochford had made against the marital home. Finally, $15,000 was paid to Sharon Rochford for arrearages in child support. Again, neither appellant questions these payments.

## A.
### *The Awards for Past and Future Child Support.*

Laser and Lazarus contend that a trial court cannot make payment of future support a lien on a husband's personal property. In support of this, the intervenors rely upon the decision in *Lenz v. Lenz* (1975), 33 Ill. App. 3d 568, 337 N.E.2d 195. There the court noted that under section 44 of "An Act to regulate the practice of courts in granting equitable relief" (Ill. Rev. Stat. 1975, ch. 22, par. 44, now transferred to Ill. Rev. Stat. 1977, ch. 110, par. 394), an order for the payment of money shall be a lien only on the lands and tenements of the party against whom it is entered. The Marriage and Dissolution of Marriage Act contains a similar limitation. (Ill. Rev. Stat. 1977, ch. 40, par. 703.) The cases interpreting section 44 have uniformly held that an alimony decree cannot be lien on a husband's personal property. (*Schwarz v. Schwarz* (1963), 27 Ill. 2d 140, 150, 188 N.E.2d 673; *Yelton v. Handley* (1888), 28 Ill. App. 640.) Based on this authority, the court in *Lenz* held at page 574:

> "The only way under Illinois law to make an award for future support a lien on the husband's property would be to go into court after the arrearage has in fact accrued and have such arrearage reduced to a judgment, issue an execution thereon and deliver the execution to the sheriff."

In the case at bar, however, Sharon Rochford did not, at any time, attempt to place a *lien* on Michael Rochford's seat on the exchange. Instead, she sought to enforce the provisions of her dissolution of marriage judgment through a seizure of Rochford's membership by a court-appointed sequestrator. The question presented by this situation is whether the equitable remedy of sequestration is independent of the remedy at law (judgment and execution). The appellants argue that sequestration is not independent and that, as judgment creditors, they were entitled to a pro-rata distribution of the proceeds from the sale of the membership before any funds were disbursed to Sharon Rochford.

In *Peck v. Peck* (1919), 214 Ill. App. 41, and *Griswold v. Griswold* (1903), 111 Ill. App. 269, the courts applied the principles of the *Yelton* case to divorce proceedings in which a wife obtained as security for future payments an injunction prohibiting her former husband from selling his personal property. The courts held that an injunction is tantamount to a lien on the husband's personal property and could not, therefore, be sustained. (*Errissman v. Errissman* (1860), 25 Ill. 119.) In *Williams v. Williams* (1935), 279 Ill. App. 274, however, the court, after citing both *Griswold* and *Peck*, held that where circumstances warranted it, a trial court had the authority to order the *sequestration* of personal property to

enforce obedience to a decree for separate maintenance even though the same property was not subject to the lien of an equity decree. Here, as previously noted, the need for a sequestration was manifest. And the temporary restraining order prohibiting the sale of the seat prior to the appointment of a sequestrator appears to have been necessary to effectuate the sequestration. *Victor v. Victor* (1961), 31 Ill. App. 2d 60, 175 N.E.2d 655.

■■ Section 47 of "An Act to regulate the practice of courts in granting equitable relief" (Ill. Rev. Stat. 1977, ch. 110, par. 397) authorizes a variety of mechanisms by which an equity order may be enforced. An order may be carried out by execution directed to the sheriff, which execution, when issued, shall have the same operation and force as similar writs issued upon a judgment for the payment of money. The section also provides for contempts, attachments and sequestrations. Laser contends, in effect, that these remedies are interdependent and that an order of sequestration creates no rights on behalf of the party requesting it unless such party has also obtained a prior judgment at law. The provision in question does not support this interpretation. After setting forth the manner in which an equity order may be executed by a writ, the section states, "*or* the court may, if necessary, direct an attachment to be issued against the party disobeying such order, and fine or imprison him, or both, in the discretion of the court, and may also direct a sequestration for disobedience of any order." (Emphasis added.) A sequestration is independent of any other equitable remedies or remedies at law that may have been available to Sharon Rochford to enforce the conditions of her dissolution of marriage judgment. Sharon Rochford chose an appropriate equitable remedy to enforce her judgment. Neither of the intervenors obtained a creditor's bill or instituted proceedings to discover Michael Rochford's assets. Neither attempted to enforce his or her judgment through an appropriate mechanism. Their judgments remained unenforced when Sharon Rochford petitioned for the appointment of a sequestrator to enforce hers. For that reason their claims were subordinate to those of Ms. Rochford.

Nothing in the *Lenz* case compels a result opposite to the one we reach here. *Lenz* was concerned with the propriety of placing a lien on property not even in existence at the time the order was entered[2] and without any evidence of a refusal to pay on the part of the defendant husband. Here, on the other hand, the evidence of Michael Rochford's contumacious conduct is manifest and undisputed. Rochford owned property which could be sold in satisfaction of his obligations under the

---

[2] *Lenz* involved an anticipatory interest in a trust which, at the time in question, had not yet vested.

.

dissolution of marriage judgment. Ms. Rochford did not attempt to place a lien on that property but sought to have it sold by a court-appointed sequestrator.

Although the intervenors have challenged the propriety of the trial court's order setting up a trust for future support, the Marriage and Dissolution of Marriage Act specifically allows for the establishment of a trust for minor children (Ill. Rev. Stat. 1977, ch. 40, par. 503(d)). In light of Michael Rochford's demonstrated unwillingness to make direct child support payments, the establishment of a trust fund to guarantee several months child support payments was, in our opinion, warranted. See *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 681, 402 N.E.2d 332.

## B.
### *The Award of Attorneys' Fees.*

■■ Both intervenors argue that the payment of $16,700 to Sharon Rochford's attorneys, Katz, Karacic & Helmin, was improper. They cite section 508(b) of the Marriage Act, which states:

> "The court may order that the award of attorney's fees and costs hereunder paid directly to the attorney, who may enforce such order in his name, or that they be paid to the relevant party. Judgment may be entered and execution levied accordingly."

According to the intervenors, the last sentence cited means that an award of attorney's fees may be entered only through a judgment at law and execution thereon. The provisions for attorney's fees should not be so construed because, in our opinion, it mentions but one method of enforcement and states that such method *may* be used. Although in dissolution of marriage cases, like in other equity proceedings, the trial court does not have unlimited equity powers, it does have the enforcement powers granted to it by statute. An appointment of a sequestrator is an exercise of one such power. Here, in ordering the payment of Sharon Rochford's attorneys' fees out of the proceeds of the sale, the trial court was merely enforcing one of the conditions of the original judgment dissolving the Rochfords' marriage. Lazarus claims that in receiving these fees, Ms. Rochford's attorneys were allowed in effect to reduce their award to judgment and to satisfy that judgment out of the sequestered funds without a formal writ of execution. This objection misapprehends the nature of the sequestration proceeding. It was brought to enforce compliance with an earlier judgment, one condition of which was the payment of attorneys' fees. It was not necessary for Ms. Rochford or her attorneys to resort to a suit at law for recovery of the fees. The sequestration proceeding was independent of that alternative remedy.

■■ Laser also challenges the award of fees on the ground that the attorneys could not have sued Michael Rochford directly for these fees.

The provision for attorneys' fees indicates otherwise. The payment of their fees was a condition of the original judgment dissolving the Rochfords' marriage. The correctness of that judgment and its orders is not before this court and Laser may not now dispute them. His reliance on *Lenz v. Lenz* for the proposition that the award of attorneys' fees was error is, therefore, misplaced, because that case was a direct appeal from the original judgment dissolving the marriage and award of fees. No such appeal was prosecuted here. Moreover, to the extent that the attorneys in the present case were compensated for post-judgment work on Ms. Rochford's behalf, again Michael Rochford's responsibility for those fees was established in the original judgment dissolving the marriage. Laser's argument that Sharon Rochford never proved her inability to pay her own attorneys' fees and that, under *Lenz,* she was not entitled to that award lacks merit. Here there was a specific award of fees in the event Ms. Rochford was required to resort to legal means to enforce the dissolution of marriage judgment. No appeal was prosecuted from that judgment. Even in the absence of such award, the payment of fees to enforce a judgment is appropriate without proof of inability to pay. *Gilmore v. Gilmore* (1979), 74 Ill. App. 3d 831, 839, 393 N.E.2d 33; *Tippet v. Tippet* (1978), 65 Ill. App. 3d 1018, 383 N.E.2d 13.

## C.
### *The Sequestrator's Fee*

■■ At oral argument Laser challenged the trial court's award of $3,000 to the sequestrator for his services. Laser does not question the reasonableness of the fee itself but asserts that any fees paid in conjunction with the enforcement of Sharon Rochford's dissolution of marriage judgment were subordinate to Laser's rights as a judgment creditor. We have heretofore determined that the judgment of Laser, as well as that of Lazarus, remained unenforced at the time Sharon Rochford petitioned the trial court for the appointment of a sequestrator to enforce her judgment. Since the enforcement of Ms. Rochford's judgment took precedence over the unenforced judgments of the intervenors, the payment of the sequestrator's fee for his services as part of that enforcement procedure was, in our opinion, proper.

For the reasons hereinabove stated, we affirm the order of the circuit court of Cook County.

Affirmed.

STAMOS and DOWNING, JJ., concur.