**Elgin, Joliet & Eastern Railway Company, Appellant, v. Northwestern National Bank of Chicago, Appellee.**

### Gen. No. 5489.

**Elgin, Joliet & Eastern Railway Company, Appellee, v. Crouch Construction Company et al. (Chicago Dredging and Dock Company, Appellant.)**

### Gen. No. 5490.

1.  DAMAGES—*when liquidated, treated as penalty.*  Where the amount agreed to be paid for the breach of the contract greatly exceeds the actual damages suffered on account of the delay, that is to say, if the amount agreed to be paid is out of proportion to the probable damage sustained, the court will be disposed to treat the stipulated sum as a penalty and not as liquidated damages.

2.  DAMAGES—*when liquidated, treated as penalty.*  The fact that parties fix a sum to be paid and call it liquidated damages, does not always control the question as to the measure of recovery for the breach of the contract, and if the clause fixing the amount of damages appears to have been inserted to secure prompt performance of the agreement, it will be treated as a penalty and not more than actual damages proved can be recovered.

3.  INTEREST—*liability of custodian of fund interpleaded.*  Whether

36 APPELLATE COURTS OF ILLINOIS.

E., J. & E. Ry. Co. v. N. W. Nat'l B'k of Chicago, 165 Ill. App. 35.

the interpleader be at common law or by statute the custodian of the fund complaining in the interpleader cause, will, unless he shall have paid the money into court, be decreed to pay it to the rightful claimant when ascertained, with interest thereon through the whole interpleader period, during which he has presumably enjoyed its beneficial use.

4. INTEREST—*what instrument in writing within meaning of statute.* A written order accepted, is an instrument in writing for the payment of money within the meaning of the Interest statute, and if at the time of the acceptance of such an order the amount due thereunder has not been ascertained, interest will begin to run upon the amount when ascertained from the time of the acceptance of such an order.

5. MECHANIC'S LIENS—*when subcontractor not entitled to lien.* If the contract between the owner and the original contractor provide that the work shall be delivered free from liens, a subcontractor is entitled to no lien.

6. MECHANIC'S LIENS—*when personal judgment unauthorized.* If no lien be recovered a personal judgment against a defendant in a proceeding for lien is unauthorized.

Mechanic's lien. Appeal from the Circuit Court of Lake county; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at the April term, 1911. Affirmed. Opinion filed October 13, 1911. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** On May 10, 1898, the Elgin, Joliet & Eastern Railway Co., hereinafter called the Railway Co., entered into a contract with the Crouch Construction Co., hereinafter called the Crouch Co., whereby the latter undertook to do certain dredging and build a slip and dock at Waukegan, Illinois, upon the property of the Railway Co., the total price not to exceed $24,000. Payments were to be made from time to time within 85% of the engineer's estimates, the remaining 15% to be reserved until all the work should be completed and the issue of his final estimate. By paragraph 4 of the contract the Crouch Co. covenanted to turn over the completed work free from all indebtedness, judgments and liens of every character, and to protect and save the Railway Co. harmless from all expenses and costs in connection

therewith. The work was to be completed by August 15, 1898, and in the event it should be delayed, the 5th paragraph covenanted that time was of the essence of the contract, and that delay would entail serious loss and damage upon the Railway Co., difficult, if not impossible, of exact measurement, and $250 per day was stipulated for as liquidated damages for every 24 hours' delay after midnight of August 15, 1898, which the Crouch Co. agreed to pay upon demand; that the Railway Co. might apply on account thereof any moneys which may have been retained by it under the estimates provided for.

On September 20, 1898, the work was not completed and the Crouch Co. made an assignment for the benefit of creditors in the County Court of Cook county to George C. Aldrich, who, under the order of said court, proceeded with the work and completed the same on or about December 14, 1898. Before the date fixed for the completion of the work the Crouch Co. obtained cash advances from the Northwestern National Bank of Chicago, hereinafter called the Bank, upon three written orders drawn by the Crouch Co. on the Railway Co. payable out of the moneys to become due the Crouch Co. One was for $7500 and two were for $5000 each. The Railway Co. paid all the orders except $2500 on the third, which was in the words and figures following:

"CHICAGO, ILLINOIS, July 22, 1898.
*To the Treasurer of the Elgin, Joliet & Eastern Ry. Co., Chicago, Ill.*
DEAR SIR:
Please retain out of any moneys due us on account of Waukegan work Five Thousand Dollars ($5000.00), and pay the same to the Northwestern National Bank on or about Aug. 25, and oblige.
Yours very truly,
CROUCH CONSTRUCTION Co.,
Per C. D. Crouch, Prest."
On which was endorsed the following:
"Noted; will comply with above request. This is

the 2nd request to pay $5000 to Northwestern National Bank out of any amount due Aug. 25th. July 23, 1898. F. D. Raymond, Treas."

The engineer's final estimate of December 31, 1898, showed an actual cost of the work under the contract to be $21,897, $1727.43 of which was unpaid. After the assignment various mechanics' lien suits were commenced for labor and materials and others threatened. On March 3, 1899, the Railway Co. filed a bill under section 31 of the Mechanics' Lien Act of 1895. The bill made the Crouch Co., George C. Aldrich, assignee, the Bank, the Chicago Dredging and Dock Co., hereinafter called the Dredging Co., and the other mechanic's lien claimants parties defendant. It alleged that the work was not completed until December 14, 1898, and on account thereof the Railway Co. suffered damage. The bill asked for a general settlement, as provided by the said section 31 then in force, and stated that if anything was found to be owing from the Railway Co., it would bring the amount into court and pay it to whom it might be found due.

There was a hearing and the decree dismissed several of the mechanics' lien claims as invalid. It found that certain others were valid claims, but denied the liens and entered judgment thereon, disallowed the damages claimed by the Railway Co. and decreed that the Bank recover from the Railway Co. the sum of $1727.43, together with interest thereon at 5% per annum from the date the Bank filed its answer, to the date of the decree, making a total of $2738.

The Railway Co. and the Dredging Co. prosecuted separate appeals from the decree, which were consolidated here.

HENRY S. WILCOX, for Chicago Dredging and Dock Company, appellant; JESSE WILCOX, of counsel.

HOLT, WHEELER & SIDLEY, for Elgin, Joliet & Eastern Railway Company, appellant.

E., J. & E. Ry. Co. v. N. W. Nat'l B'k of Chicago, 165 Ill. App. 35.

CHARLES M. STURGES, for Northwestern National Bank of Chicago, appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

The Railway Co. proved no actual damages, but contends that the Bank is not entitled to the fund because the Railway Co. was entitled to $250 per day as liquidated damages from August 15, 1898, until December 14, 1898, when it is alleged the work was entirely completed. This would make the damages amount to approximately $30,000. Under the contract the full consideration for the work was not to exceed $24,000 and the engineer's final estimate showed the actual cost to be $21,897. Under this construction of the contract the Railway Co. might take from the Crouch Co. the completed work for nothing and more than $8,000 besides. In its argument here the Railway Co. confined its claim of $250 per day from August 15 to September 20, 1898, the day when the assignee was appointed, amounting to $8750. Either allowance would far more than absorb the balance due under the contract, and if the position of the Railway Co. is well taken, then there was nothing left to be paid on the last half of the last order held by the Bank.

Where the amount agreed to be paid for the breach of the contract greatly exceeds the actual damages suffered on account of the delay—that is to say, if the amount agreed to be paid is out of proportion to the probable damage sustained, the court will be disposed to treat the stipulated sum as a penalty and not liquidated damages. The fact that parties fix a sum to be paid and call it liquidated damages, does not always control the question as to the measure of the recovery for the breach of the contract, and if the clause fixing the amount of damages appears to have been inserted to secure prompt performance of the agreement, it will be treated as a penalty and not more than

actual damages proved can be recovered. Scofield v Tompkins, 95 Ill. 190.

It is said in Sedgwick on Measure of Damages, p 493: "If, from the nature of the agreement, it is clear that any attempt to get at the actual damages would be difficult, if not vain, then the courts will incline to give the relief which parties have agreed on. But if, on the other hand, the contract is such that the strict construction of the phraseology would work absurdity or oppression, the use of the term liquidated damages will not prevent the courts from inquiring into the actual injury sustained and doing justice between the parties."

The contract, among other things, required the excavation of a waterway to be of a uniform depth; the piling, timbering, capping, anchoring, etc., of the excavated frontage in the manner specified, and with the materials of the size and quality prescribed; the disposal of the excavated material in the manner prescribed, and the filling in with earth to a certain level. Full execution of every one of these requirements was necessary to the complete performance of the construction of said slip and dock. Had there, after August 15, 1898, remained a single load of excavated earth to be removed, one cubic yard of back filling to be put in place and leveled, or one timber cap to be bolted in, under the construction of the contract contended for by the Railway Co., $250 per day must be the price of such deficiency, so long as it should continue; nor could there, in that case, be any equal abatement or apportionment of the whole *per diem* stipulated sum to the degree of just compensation for the deficiency in completion. Whenever such a result could be produced, the sum named as liquidated damages will be construed as a penalty only, to be restrained in recovery to just compensation for actual damages as they shall be shown by the proofs. Trower v. Elder, 77 Ill. 452, and cases there cited.

The proof shows that after August 15, 1898, the Railway Co. made various payments to various persons. This tended to show that it did not then suppose that the $250 per day was liquidated damages. When a contract or agreement is in any manner indefinite or uncertain, and the parties have, by their own conduct, placed a construction upon it which is reasonable, courts will adopt such construction. Vermont Street M. E. Church of Quincy v. Brose, 104 Ill. 206; Storey v. Storey, 125 Ill. 608; Street v. Chicago Wharfing Co., 157 Ill. 605; Work v. Welsh, 160 Ill. 468; Consolidated Coal Co. v. Schneider, 163 Ill. 393. All the circumstances considered, it would seem incredible that the parties to this contract could have understood and intended to pay as damages the amount contended for by the Railway Co. It would be absurd and highly oppressive to so hold in the absence of proof of any actual damages. We think it entirely clear that the sum stipulated for as damages was intended as a penalty, regardless of the language used.

It is contended by the Railway Co. that the court erred in allowing interest upon the $1727.43. The bill was, both in form and substance, a bill of interpleader, although brought under the mechanics' lien act then in force. The rule is that the custodian of the fund, complaining in the interpleader cause, will, unless he should have paid the money into court, be decreed to pay it to the rightful claimant when ascertained, with interest thereon through the whole interpleader period, during which he has presumably enjoyed its beneficial use. 2 Daniell's Chancery practice, (6 Am. Ed.) 1563, note 11 (a); Spring v. South Carolina Ins. Co., 8 Wheaton (U. S.) 268 (p. 293); Sibley v. Equitable, etc. Society, 3 N. Y. Supp. R. 8; Same case, 24 Jones & S. N. Y. Superior Court, R. 274. The Railway Co. cannot be heard to contend that the equitable rule charging an interpleader complainant with interest on the fund, if not paid into court, does not apply here because the bill in the case was for general settlement under the

mechanics' lien act, or because the Railway Co. itself claimed the fund. True, this was a statutory inter- pleader, but the procedure thereunder is governed by the equitable rules and incidents which prevail in chan- cery. McGraw v. Bayard, 96 Ill. 146. Nor is it any hardship to the Railway Co. that it should be required to pay interest on the money the use of which it has enjoyed for more than twelve years.

The written order accepted by the Railway Co. was an instrument in writing for the payment of money. Section 2, chapter 74, Hurd's R. S. provides for inter- est on all moneys after they become due on instru- ments in writing. Every demand for money funda- mentally involves the question of the right of the claimant to it and to how much. These questions may be the subject-matter of prolonged controversy. Nev- ertheless, when those uncertainties shall be at last re- solved by legal ascertainment, the title and quantum as found, if they shall have arisen upon an instrument in writing for the payment of money, will, when found, relate back, for the purpose of the computation of in- terest, to the date at which the right of the determined quantum originally existed in the law. Under the statute, both the quantum of money, and the right to it, stand finally liquidated and ascertained as of that date, for the purpose of interest. Dobbins v. Higgins, 78 Ill. 440; Scroggs v. Cunningham, 81 Ill. 110; Downey v. O'Donnell, 92 Ill. 559; Heissler v. Stose, 131 Ill. 393; Dick Co. v. Sherwood Letter File Co., 157 Ill. 325; Bauer v. Hindley, 222 Ill. 319.

As $1727.43 was shown to be due on the contract, and as there were no other valid claims except that of the Bank, and as the Railway Co. has not shown that it was entitled to recover damages for failure to com- plete the contract on time, it follows that it should have paid the money to the Bank August 25, 1898, and we are of opinion that the Railway Co. was liable to pay this interest.

The Dredging Co. was a subcontractor under the Crouch Co., and obtained a judgment, but was denied a subcontractor's lien therefor. Its appeal is on the ground that the court erred in denying it a lien. If it was entitled to a mechanics' lien for the amount allowed by the judgment of the court, that would wipe out the sum awarded to the bank, which would be erroneous, as it would make the Railway Co. pay twice. Paragraph 4, of the contract between the Railway Co. and the Crouch Co. provided that the work should be delivered free from liens. Therefore no subcontractor could have a lien. Von Platen v. Winterbotham, 203 Ill. 198; Brown Construction Co. v. Central Illinois Construction Co., 234 Ill. 397.

The judgment in favor of the Dredging Co., as well as the judgment in favor of the other lienors against the Crouch Co., appear to be invalid under the holding of the Supreme Court in Turnes v. Brenckle, 249 Ill. 394, which says: ''While the power of a court of equity to enter a personal decree for a deficiency after there has been a sale has been recognized, we are not aware of any case which holds that the court may enter a personal decree where there has been an entire failure to establish a lien under the statute.'' No error has been assigned questioning the validity of these judgments, but such invalid judgments do not aid at all to give the Dredging Co. a lien against the Railway Co. The Dredging Co., in its contract with the Crouch Co., also covenanted to complete the work called for by the contract free from indebtedness and liens. It thereby waived its right to a mechanics' lien.

Finding no reversible error in the record, both portions of the decree appealed from are affirmed.

*Affirmed.*