Century Pipe & Supply Company, Plaintiff-Appellee, v. Empire Factors Corporation, Defendant-Appellant, Joseph H. Lohman, Sheriff of Cook County, Co-Defendant.

**Gen. No. 47,404.**

First District, First Division.
September 29, 1958.
Released for publication October 23, 1958.

Samuel J. Andalman, of Chicago, for appellant.

Rappaport, Clorfene & Rappaport, of Chicago (Hamilton Clorfene, of counsel) for appellee and cross-appellant.

JUSTICE SCHWARTZ delivered the opinion of the court.

This is a controversy between two judgment creditors, Century Pipe & Supply Company (Century), plaintiff, and Empire Factors Corporation (Empire), defendant, growing out of a levy on property of their common debtor Tru-Link Fence Company (Tru-Link). Century recovered a judgment against Empire for $2310.62, from which Empire has appealed. Defendant Lohman was dismissed from the case and his position in the matter needs no consideration on this appeal.

As time is a material issue in this case, the facts are set forth chronologically. On January 5, 1956, Century obtained a judgment by confession in the Municipal Court of Chicago against Tru-Link for $15,645.41. On January 10, 1956, Century executed an indemnity bond and placed an execution with the bailiff of the Municipal Court, but made no request for a levy. On January 16, 1956, Century's execution was served showing demand made and no part satisfied. On January 27, 1956, Tru-Link petitioned to set aside Century's judgment. That petition was dismissed February 17, 1956, for want of prosecution. On February 10, 1956, a third party foreclosed on a chattel mortgage against Tru-Link. On March 12, 1956, Empire obtained a judgment against Tru-Link in the Circuit court for $5840.25. Empire immediately executed and *posted* an indemnity bond, placed an execution with the Sheriff, and ordered a levy, and the Sheriff seized the property here involved on that same day, March 12. On March 15, 1956, Century posted its indemnity bond which had been executed on January 10, 1956, more than two months before, and ordered the bailiff to levy. The bailiff made a "Report of Levy," in which he said: "Returned by order of Atty. 3/23/56, Rappaport, Clorfene & Rappaport, by Louis Pager. Sheriff's Office in Possession—place closed." This we construe to mean that the bailiff did not make a levy nor take any steps in that direction because the property was in the possession of the Sheriff. On March 21, 1956, Century's attorneys sent a registered letter to Empire's attorney, advising of what they called Century's prior lien. At the trial evidence was introduced to the effect that a copy of the letter was found in the files of the Sheriff's office and a deputy in charge of the Empire levy said he first saw the letter three to four weeks after the levy was made, when he came to work one morning and found it on his desk. He did not know how it got there. Empire's attorney did not deny that he received the

167

letter. On March 23, 1956, Century's attorneys authorized return of the levy and return was made, as before stated. On March 30 and April 5, 1956, sales were made of the property pursuant to levy made thereon by Empire. The total proceeds amounted to $2311.22. On April 5, 1956, Century's execution expired and was returned to the Clerk of the Municipal Court. On May 15, 1956, Century filed this suit, and the judgment appealed from was rendered in due course.

Upon the trial Dennis, president of Tru-Link, testified that while he was operating Tru-Link he had a talk with John Nagel, president of Century, and that they entered into an agreement sometime in January 1956, whereby Dennis agreed to continue purchasing from Century on a cash basis and in addition, to add to each remittance an amount equal to approximately 10% of the Century judgment. In return, Century agreed not to press the judgment it had obtained against Tru-Link on January 5, 1956. Dennis testified that he had made four payments pursuant to that agreement. One Hirshfield, treasurer of Empire, testified in substance that Nagel, president of Century, told him on April 9, 1956, that he had a judgment against Tru-Link since January but had done nothing about it because "so far Dennis has been making an effort to pay me what he owes me." Nagel was not called as a witness by Century to rebut any of that testimony. Century points out certain matters which, it argues, discredit the testimony of Dennis and Hirshfield. However, in the absence of testimony to the contrary, the testimony of Dennis and Hirshfield cannot be disregarded.

■ Chapter 77, Paragraph 9, Judgments, Decrees and Executions (Illinois Revised Statutes 1957) is as follows:

"No execution shall bind the goods and chattels of the person against whom it is issued, until it is de-

168

livered to the sheriff or other proper officer to be executed. . . ."

That section has been construed to mean that an execution is a lien from the time it is delivered to the Sheriff to be executed. Watkins v. Dunbar, 232 Ill. App. 1, 9 (1924). Therefore, it would appear that Century acquired a lien on Tru-Link property on January 10, 1956, but it was its duty to enforce its lien promptly by levy and sale. We will discuss later the effect of Century's failure to do so.

Two other sections of the statute on judgment (Par. 13 and Par. 54, Ch. 77, Illinois Revised Statutes 1957) have been cited by counsel as bearing upon the question of conflicting liens and levies. Par. 13 is only applicable to *judgment liens on real estate*. Lawrence v. McIntire, 83 Ill. 399 (1876). Par. 54, which covers the subject of conflicting liens and relates to goods or chattels, is as follows:

"If the goods or chattels sold on execution have been attached by another creditor or seized on another execution, either by the same or any other officer, or if before the payment of the residue, after the satisfaction of such execution to the debtor, another writ of attachment or execution against him is delivered to the officer who made the sale, the proceeds of the sale shall be applied to the discharge of the several judgments in the order in which the respective writs of attachments or executions become a lien or are entitled by law to share, and the residue, if any, shall be returned to the debtor or his assigns."

In this law there are two distinct provisions, namely, the priority between creditors who have attached or seized the property prior to the distribution of the proceeds and, secondly, the priority between creditors who give notice to the levying officer with respect to the *residue* after payment has been made to the credi-

169

tors who have attached or seized. Only the first provision has application here. It will be noted that it relates to goods or chattels which have been *seized* by two creditors. The question arises in the instant case as to whether there was an actual seizure or levy by Century, the statute evidently establishing as a matter of policy that in such circumstances the law favors the creditor who has made his execution effective by seizing the goods and chattels.

██ A creditor can levy upon the goods and chattels seized on a prior levy even though the property is in possession of the Sheriff. White v. Culter, 12 Ill. App. 38 (1882). In that case the Sheriff levied on February 13, and on the 14th a constable sought to levy. Finding the goods in possession of the Sheriff, the constable "indorsed on said writ a levy of the same goods and appointed as his custodian the same individual as the sheriff had previously appointed." On the 15th, another creditor obtained a judgment and placed an execution with the Sheriff who made the first levy. The proceeds were more than adequate to cover the first judgment. The issue was the priority between the levy of the 14th and the one of the 15th. The court held that the levy of the 14th was properly made, as the property could not be taken out of the hands of the officer who first seized the goods, and hence the method used made the sheriff the custodian for both parties. No such procedure was followed in the instant case. There was no seizure or levy by Century.

██ The court further said in White v. Culter, *supra*, p. 41, that it was the design of the statute to give creditors priority for their diligence. The reason for this with respect to personal property is obvious. Such property is easily moved and disposed of. Its identity as the property of the debtor may be questioned. A levy involves risk, and the creditor, as a

rule, must give an indemnity bond to the officer making the levy.

 In the instant case we cannot disregard the testimony with respect to the agreement which Dennis made with Century. That is sufficient to show that Century, although it caused the execution to issue, did not proceed to levy upon the property of Tru-Link because of an agreement to give Tru-Link time to pay the debt. Century says that it delayed because a petition to vacate the judgment had been filed and it was unwilling to take the chance of that petition being sustained and the judgment set aside. This is not an adequate excuse, particularly with respect to delay after the dismissal of the petition for want of prosecution. Moreover, as we have said, that excuse for the delay is in conflict with the uncontroverted testimony. The object of an execution is to obtain satisfaction of the judgment on which it is issued. Upon delivery to the proper officer, the law imposes the duty upon the officer to execute it without delay. In Cook county it is the uniform practice for the bailiff or sheriff to act only on the direction of lawyers and upon their giving him assurance against liability. Any act of a creditor diverting an execution from its purpose renders it inoperative against other creditors and clothes them with priority. Gilmore v. Davis, 84 Ill. 487, 489 (1877); Everingham v. Nat. City Bank of Ottawa, 124 Ill. 527, 536 (1888); Payne v. Brownlee, 196 Ill. App. 108, 112 (1915); Western Union Cold Storage Co. v. Rose, 60 Ill. App. 452, 456 (1895); Myers Co. v. Arundel Supply Co.'s Trust Estate, 183 A. 543 (Md. 1936). The rationale of this rule is apparent. The act of levying is the effective method of notice to all that the personal property is subject to a claim secured by a lien. In the case of real property the rule is different because of the availability of recording the judgment.

171

The failure of Century to proceed promptly to enforce its judgment and its failure to levy on the goods and chattels seized on the execution issued by Empire makes it necessary to reverse the judgment in this cause.

Judgment reversed.

McCORMICK, P. J. and ROBSON, J., concur.