**GENERAL TELEPHONE COMPANY OF ILLINOIS, a corporation, Plaintiff,**

v.

**Charles ROBINSON, et al., Defendants.**

No. 79–3030.

United States District Court,
C. D. Illinois,
Springfield Division.

July 23, 1982.

Thomas M. Barger, Jr., Livingston, Barger, Brandt, Slater & Schroeder, Bloomington, Ill., for General Telephone.

David Davis, Jr., Bloomington, Ill., for John A. Williams, d/b/a J.A.W. Contractor.

Robert W. Lewis, Benton, Ill., for Charles Richard.

Ralph Turner, Luedtke, Hartweg & Turner, Bloomington, Ill., for McLean County Bank.

J. Phillip, O'Brien, Graham & Graham, Springfield, Ill., for Roland Machinery Co.

John P. Schwulst, Arnold, Gesell & Schwulst, Bloomington, Ill., for First State Bank of Maple Park.

Tyrone C. Fahner, Atty. Gen., Michael Paschon, Asst. Atty. Gen., Springfield, Ill., for State of Ill., Dept. of Revenue.

Gerald D. Fines, U. S. Atty., Thomas Schanzle-Haskins, Asst. U. S. Atty., Springfield, Ill., James Wilkens, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for the U. S.

George L. Chesley, Jr., Bloomington, Ill., for James T. Finegan, trustee for Robinsons.

## ORDER

J. WALDO ACKERMAN, Chief Judge.

This is an interpleader action filed by General Telephone Company to determine who has priority among the competing claimants as to $83,916.28 which General Telephone owes under a contract entered into with C & R Cable Splicing Contractor on March 23, 1976. The sum total of the claims exceeds the amount due under the contract. The question simply is, under Illinois law, which creditors' claims have priority. Although the question is simple, the answer, unfortunately, does not lend itself to easy resolution.

The various claimants, the amounts of their respective claims, the dates those claims arose, the dates those claims were allegedly "perfected," and the manner in which those claims were allegedly perfected are set forth as follows:

| Claimant | Amount | Date Claim Arose | Date "Perfected" | Manner Of Perfection |
|---|---|---|---|---|
| J. A. W. Contractor | $ 2,740.50 plus 74.80 costs 2,815.30 | Judgment obtained Against C&R Cable Splicing, Inc. July 2, 1978 | Sept. 6, 1978 | Service of Garnishment Summons on Gen. Tel. |
| Roland Machinery Company | 3,600.71 | Mechanic's lien on materials furnished be— tween April 10, 1978 and Aug. 20, 1978 | Oct. 20, 1978 | Notice of claim for lien served on Gen. Tel. and Charles Robinson |
| First State Bank of Maple Park | 19,947.87 | Two judg- ments obtained Oct. 17, 1978 against Charles Robinson and Dorothy Robinson | Oct. 19, 1978 | Citation to discover assets issued to Gen. Tel. |
| L. W. Williams Contractor, Inc. | 4,780.00 | July 27, 1978 Mechanic's lien | Nov. 9, 1978 | Notice of mechanic's lien served on Gen. Tel. |
| McLean Co. Bank | 35,490.77 | Judgment obtained Oct. 24, 1978 against Charles Robinson and Dorothy Robinson | Jan. 10, 1979 | Garnishment summons served on Gen. Tel. |
| United States | 21,036.25 | Date of assessment of tax defi- ciency: July 27, 1978 | Dec. 12, 1978 | Notice of tax lien filed in office of Recorder of Deeds |

| Claimant | Amount | Date Claim Arose | Date "Perfected" | Manner Of Perfection |
|---|---|---|---|---|
| Total | 30,145.79 51,182.04 | Dec. 18, 1978 | Feb. 20, 1979 | Notice of tax lien filed in office of Recorder of Deeds |
| Gen. Tel. | 603.00 | Attorney's fees and costs | | |

Initially, I note that not only is Illinois law concerning the creation of liens unclear, but additionally, the actions of several parties in this case have served to confuse the issues even more. On December 29, 1980, the Government filed a motion for summary judgment in which it asserted that the parties who had proceeded to enforce their claims by way of citation to discover assets, namely J.A.W. Contractor and First State Bank of Maple Park, took prior to the Government's tax liens, but all other creditors took subsequent thereto. At oral argument, the Government turned about face and adopted the position of McLean County Bank. McLean County Bank, in its memorandum of January 28, 1981, asserted that the Government's tax liens took priority over all other liens; that issuance of a citation to discover assets does not create a lien; and, that its lien, created by service of garnishment summons, was second in priority. It also stated that J.A.W. had proceeded by way of citation to discover assets. In response to inquiry by the Court via its order dated November 14, 1981, and filed November 16, 1981, McLean County Bank also did an about face and now claims that its lien is prior to the Government's second tax lien. Moreover, it turns out that J.A.W. Contractor attempted to enforce its judgment by serving a garnishment summons on General Telephone, not by way of citation to discover assets.

Turning now to the legal issues in this case, an initial matter raised by the Trustee is whether First State Bank of Maple Park obtained a final judgment upon which execution could issue. The Trustee contends correctly that a citation may issue only with respect to "a judgment upon which execution may issue." Ill.Rev.Stat. ch. 110A § 277(a) (1981).

The judgment order obtained by First State Bank and entered October 17, 1978, specifically reserved the question of the addition of reasonable attorney's fees and directed the plaintiff to set the issue of attorney fees for prove-up. Moreover, the words "execution may issue" were stricken from the judgment order.

■ "To be final, an order must conclude the litigation between the parties so that only execution remains to be accomplished if affirmed on appeal." *Kulins v. Malco, Inc.*, 79 Ill.App.3d 982, 985, 35 Ill.Dec. 194, 398 N.E.2d 1144 (1979). Execution may issue only as to final judgments. *Wilson-Jump Co. v. McCarthy, Hundrieser and Associates, Inc.*, 85 Ill.App.3d 179, 40 Ill.Dec. 230, 405 N.E.2d 1322 (1980). The Trustee here relies on Ill.Rev.Stat. ch. 110A § 304 as support for his position that the judgment obtained by First State Bank is not a final judgment. Supreme Court Rule 304 provides that

[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal.

The Trustee argues that since the question of fees was reserved by the Court, and

because no such findings were made, the judgment clearly was not final.

However, Rule 304 applies where multiple parties or multiple claims for relief are involved. "It is not designed to permit appeals from orders that dispose of less than all the issues in an action involving a single party and a single claim." *Coble v. Chicago Health Club, Inc.*, 53 Ill.App.3d 1019, 1021, 11 Ill.Dec. 734, 369 N.E.2d 188 (1977). The question of attorney's fees was merely one issue in an action involving a single party and a single claim. Thus, even a finding under Rule 304 would not have made this judgment appealable. *See Coble*, 53 Ill.App.3d at 1022, 11 Ill.Dec. 734, 369 N.E.2d 188.

In *Wilson-Jump Co. v. McCarthy Hundrieser and Associates, Inc.*, 85 Ill.App.3d 179, 40 Ill.Dec. 230, 405 N.E.2d 1322 (1980), an indemnity contract provided that the indemnitor would reimburse the indemnitee for all loss, damages, expense and costs and attorney's fees incurred. The court stated that under such a contract, an indemnitee would be entitled to recover reasonable attorney's fees. *Id.* at 182, 40 Ill.Dec. 230, 405 N.E.2d 1322. The court held, though, that an indemnitee was still required to establish the reasonableness of the fees incurred, stating that an indemnitor is not necessarily liable for the amount the indemnitee unilaterally agreed to pay its attorney. *Id.* The court went on to state that "[i]n this cause reasonable fees had not been established. Accordingly, it is clear that the order was not a final one upon which execution could issue." *Id.*

In *Songer v. State Farm Fire and Casualty Co.*, 91 Ill.App.3d 248, 46 Ill.Dec. 715, 414 N.E.2d 768 (1980), the trial court had determined that Country Mutual was responsible for a pro rata share of a loss resulting from a fire, but reserved the question of whether Country Mutual was liable for plaintiff's attorney's fees. When Country Mutual appealed the trial court's determination of liability, the appellate court dismissed the appeal without prejudice for lack of a final and appealable judgment and granted leave to Country Mutual to obtain a final judgment on the question of attorney's fees.

Similar to the indemnity case, in a confession of judgment case, a plaintiff has the burden of establishing his entitlement to a reasonable attorney's fee. *Larkin Bank v. Ishak*, 43 Ill.App.3d 918, 2 Ill.Dec. 620, 357 N.E.2d 840 (1976). Although the trial judge specifically reserved the issue of attorney's fees in the present case, First State Bank did not proceed with its proof on that matter. Accordingly, it did not obtain a final judgment upon which execution could issue. It follows, therefore, that a citation to discover assets could not properly issue and, in turn, that First State Bank has no lien against the interpleader fund.

Despite this finding, the court finds it necessary to address the state of the law in Illinois regarding creation of liens on intangible personal property. As far as this Court can determine, the Illinois Supreme Court has never addressed the issue of whether issuance of a citation to discover assets creates a lien upon intangible personal property. The Illinois Appellate Courts have spoken on the matter, with varying results.

In *Levine v. Pascal*, 94 Ill.App.2d 43, 236 N.E.2d 425 (1st Dist. 1968), the defendants were beneficiaries of a land trust who had assigned their beneficial interest in the trust to Palos State Bank as security for a loan from the bank. The bank never filed a financing statement or mortgage with the local recorder's office.

Sometime after this loan was made, plaintiff Levine obtained a judgment against the defendants. The circuit court issued a writ of execution on the judgment, and citation proceedings under Ill.Rev.Stat. ch. 110 § 73 were commenced against the bank.

The circuit court held that plaintiff was the holder of a valid lien superior to that held by the bank, since the bank had failed to perfect its lien. Although the bank argued that the interest in a land trust was intangible personal property which could not be reached by execution, the appellate court declined to reach that issue. The court stated:

This argument ignores the fact that plaintiff pursued two remedies following the confession of judgment against the defendants. As well as procuring a writ of execution, plaintiff initiated citation proceedings under Section 73 of our Civil Practice Act. Having the status of judgment creditor, this remedy was available to plaintiff and sufficient to establish his claim to the beneficial interest of land trust No. 15222. Clearly, *plaintiff became a lien creditor* as defined in Section 9–301(3) of the Commercial Code *when the writ of execution was placed in the hands of the sheriff.* *See,* Chapter 77, Section 9, Ill.Rev.Stat.1965, and *Century Pipe and Supply Co. v. Empire Factors,* 19 Ill.App.2d 165, at 169, 153 N.E.2d 298. While it may be doubtful whether the plaintiff could effectively enforce his lien by means of the writ of execution there is no doubt that he could do so through citation proceedings.

Thus, it is of no materiality in this case whether the beneficial interests in a land trust be categorized as a chose in action or some other form of personal property. A judgment creditor may attach on either under Chapter 73, Subsection 2(e) of the Civil Practice Act. (Emphasis supplied.)

Thus, the *Levine* court held that plaintiff became a lien creditor when the writ of execution was delivered to the sheriff and that he could enforce that lien through citation proceedings.

Two cases subsequent to *Levine* involving similar fact situations have arguably misconstrued *Levine* in holding that a party can obtain a lien through citation proceedings. In *Bank of Broadway v. Goldblatt,* 103 Ill.App.2d 243, 243 N.E.2d 501 (1st Dist. 1968), the court stated:

In *Levine v. Pascal...* it was held that a creditor who proceeds by a citation to discover assets is a lien creditor as defined in Section 9–301(3) of the Uniform Commercial Code and that such a creditor has a superior right to the beneficial interest in a land trust over a creditor who was assigned a beneficial interest in the trust as security for a loan but who

failed to file a financing statement covering that interest.

*Id.* at 247, 243 N.E.2d 501.

However, as noted above, the *Levine* court held that a lien arose upon delivery of the writ of execution to the sheriff and that enforcement of the lien could be accomplished through citation proceedings, as opposed to seizure and sale. The *Goldblatt* court ignored this distinction.

In *Mid-West National Bank of Lake Forest v. Metcoff,* 23 Ill.App.3d 607, 319 N.E.2d 336 (2d Dist. 1974), the Illinois Appellate Court for the Second District, relying on *Levine,* also held that a creditor who proceeds by way of citation to discover assets becomes a lien creditor. The misplaced reliance on *Levine* by the *Goldblatt* and *Metcoff* courts was noted in Comment, *Enforcement of Creditor's Rights,* 1975 U.Ill.L.F. 424, 433–34. The author noted also that although those cases might be limited to the circumstances present there, the legislature had effectively precluded the possibility of another case of that type from arising by amending the Illinois Commercial Code to make the filing of a financial statement no longer necessary to perfect a security interest in a beneficial interest in a trust under U.C.C. § 9–302(1)(c). "Thus, the only cases that expressly hold that a citation lien exists have been legislated out of existence." *Id.* at 434.

Unfortunately, the federal courts have added to the muddle. In *Asher v. United States,* 436 F.Supp. 22 (N.D.Ill.1976), the plaintiff Asher had secured a judgment in Cook County Circuit Court against Wente Company in the amount of $83,193.75. On December 12, 1974, a writ of execution was issued and delivered by plaintiffs to the Cook County Sheriff. On January 15, 1975, defendant United States filed a notice of federal tax lien on all real and personal property owned by Wente with the local recorder's office. On January 23, 1975, the Clerk of the Circuit Court of Cook County issued a citation to discover assets directed to Wente and plaintiffs proceeded to enforce their judgment. Thus, the notice of the federal tax lien was filed after the writ

of execution was delivered to the sheriff, but before the issuance of the citation to discover assets. The issue in that case was whether the Government's tax lien had priority over Asher's judgment. Judge Flaum stated as follows:

> It is clear that under Illinois law, a judgment creditor is granted a lien as to the debtor's property. Illinois judgment creditors are granted a lien as to the debtor's real property upon entry of the judgment. Ill.Rev.Stat. ch. 77 § 1. However, judgment creditors in Illinois only obtain a lien as to the personal property of the debtor upon delivery to the sheriff of a writ of execution. *Id.* § 9; *Rock Island Plow Company v. Reardon*, 222 U.S. 354, 364 [32 S.Ct. 164, 166, 56 L.Ed. 231] (1912); *Century Pipe and Supply Company v. Empire Factors Corporation*, 19 Ill.App.2d 165, 169 [153 N.E.2d 298] (1958).
>
> While this statement of Illinois law appears determinative of plaintiffs' rights to Wente's bank account, which is considered personal property, Illinois law has a slight quirk. Under Illinois law, 'intangible' personal property (which includes bank accounts) cannot be levied upon by way of a writ of execution. Rather in order for the judgment creditor to obtain the debtor's intangible personal property, the creditor must proceed by way of a citation to discover assets proceeding as delineated by Ill.Rev.Stat. ch. 110 § 73. Notwithstanding the need for this supplemental proceeding to satisfy the judgment, the Illinois courts have held that for state law purposes, such as priorities between judgment liens and security interests, the judgment creditor obtains a lien on the debtor's intangible personal property at the time a writ of execution is delivered to the sheriff, and *not* at the commencement of the citation to discover assets proceeding. *Levine v. Pascal*, 94 Ill.App.2d 43, 55 [236 N.E.2d 425] (1968); cf. *Mid-West Nat'l Bank of Lake Forest v. Metcoff*, 23 Ill.App.3d 607, 611–12 [319 N.E.2d 336] (1974) (quoting *Levine* with approval). (Emphasis supplied.)

*Id.* at 25. Accordingly, the court held that the plaintiffs were judgment lien creditors with a lien on Wente's bank account as of December 12, 1974, the date the writ of execution was delivered to the sheriff.

The district court's decision was affirmed by the United States Court of Appeals for the Seventh Circuit in *Asher v. United States*, 570 F.2d 682 (7th Cir. 1978). The only issue on appeal was whether the district court had ruled correctly that a valid lien existed under state law prior to the recording of the federal lien. The court stated at 683:

> It is also undisputed that a lien is created upon tangible personal property by delivery of a writ of execution to the sheriff, Ill.Rev.Stat. ch. 77 § 9, and upon intangible personal property by instituting a proceeding to discover assets under Ill. Rev.Stat. ch. 110, § 73. *Mid-West National Bank v. Metcoff*, 23 Ill.App.3d 607, 611 [319 N.E.2d 336] (1974); *Bank of Broadway v. Goldblatt*, 103 Ill.App.2d 243, 247 [243 N.E.2d 501] (1968). Since, in the present case, the federal tax lien was recorded subsequent to the delivery of the writ of execution to the sheriff, but prior to the citation to discover assets proceeding, the parties differ as to whether delivery of the writ *also* gives rise to a lien upon intangible personal property such as Wente's bank account. (Emphasis supplied.)

The Court of Appeals assumed that a lien attached upon the commencement of the citation to discover assets proceeding. The court went on to hold that in light of *Levine v. Pascal, supra*, a lien would also arise as to intangible personal property upon delivery of a writ of execution to the sheriff's office.

In *Asher*, the Government argued that a lien attaches upon the commencement of citation proceedings and not upon delivery of a writ of execution to the sheriff. In the present case, the Government and McLean County Bank assert that a lien attaches only upon delivery of the writ of execution and not upon commencement of the citation proceedings. The Seventh Circuit in *Asher*

held that a lien attaches upon either or both the delivery of the writ of execution to the sheriff and the commencement of citation proceedings. Again, the confusion arises because the district court in *Asher* specifically held that a lien did not arise at the commencement of citation to discover assets proceedings but rather only upon delivery of the writ of execution to the sheriff's office.

The Illinois Appellate Court for the Third District recently discussed the issue in *Kaiser-Ducett Corp. v. Chicago-Joliet Livestock Marketing Center, Inc.*, 86 Ill.App.3d 216, 41 Ill.Dec. 651, 407 N.E.2d 1349 (3d Dist. 1980), a mechanic's lien foreclosure suit. In that case, Kaiser-Ducett Corporation was the judgment debtor which had obtained a settlement in a mechanic's lien foreclosure suit. The trial court held that none of the claims against the settlement received by Kaiser-Ducett was superior to any of the others and, therefore, the amount tendered in settlement of the suit was held by a receiver in order for him to distribute the funds on a pro rata basis to several judgment creditors. One of the creditors claimed that it had a prior judgment lien and that it should be paid in full before other creditors were paid anything. The court stated there as follows:

> Clearly, if the lien has been perfected, the lien of a senior judgment is superior to that of a junior one... However, while a judgment may become a lien against real property if evidence of the judgment is filed in the office of the recorder of deeds in the county wherein the property is located...such a judgment cannot become a lien against personal property unless a writ of execution is delivered to the sheriff to be properly executed.... This is so for intangible as well as tangible personal property, even though a citation to discover assets proceeding must also be instituted to obtain the intangible personal property of the debtor. *Mid-West National Bank v. Metcoff*, 23 Ill.App.3d 607 [319 N.E.2d 336] (1974); *Levine v. Pascal*, 94 Ill.App.2d 43 [236 N.E.2d 425] (1968). *See also Asher v. United States*, 436 F.Supp. 22 (N.D.Ill.1976), *aff'd*, 570 F.2d 682 (7th Cir. 1978) (other citations omitted.)

However, the judgment creditor who claimed a priority argued that not only had it obtained a judgment against the judgment debtor but also on the following day had execution issued and delivered to the Grundy County sheriff. Citations to discover assets also were issued upon the president and secretary of the judgment debtor and the president of the company which was liable to the judgment debtor and had the sum of money to pay over in settlement of the mechanic's lien suit. The court held that the judgment creditor had delivered the writ of execution to the wrong county sheriff; and, therefore, the lien had not been perfected by the creditor and its judgment had no priority over the other judgment creditors. Because the court held that a lien on intangible personal property is created by delivery of a writ of execution to the sheriff, it did not address the effect of the citation to discover assets proceeding, apparently concluding that these proceedings did not create a lien on the property.

To complicate matters even more, a bankruptcy decision held that a citation to discover assets creates a lien on the intangible personal property of a debtor. In *Vendo Company v. Stoner Investments, Inc.*, 7 B.R. 240 (Bkrtcy.N.D.Ill.1980), the court framed the issue before it as follows: "Does a citation to discover assets under Illinois law create a lien upon the intangible personal property of the judgment debtor?" *Id.* at 241. The court answered its inquiry as follows:

> A citation to discover assets is a supplementary proceeding designed to aid a judgment creditor in discovering defendant's property and applying it in satisfaction of a judgment... The citation to discover assets procedure works to 'compel the application of assets discovered to satisfaction of the judgment.'... This Court holds that the citation to discover assets procedure compels the application of the assets discovered to the satisfaction of the judgment by creating a lien

upon the intangible personal property of the defendant.

*Id.* at 241.

The bankruptcy court did recognize that *Levine* squarely held that the plaintiff became a lien creditor upon delivery of a writ of execution to the sheriff but noted also that the *Levine* court said that a judgment creditor "may attach" on intangible personal property under a citation to discover assets proceeding. The bankruptcy court felt that this language indicated that a citation to discover assets creates a lien which attaches to any personal property discovered pursuant to the citation. The bankruptcy court also relied on the Seventh Circuit's opinion in *Asher*, noting, however, that the court's statement there that a lien is created upon intangible personal property by instituting citation proceedings was dicta. The bankruptcy court went on to note that although both *Asher* and *Levine* dealt with situations where the judgment creditor had delivered writs of execution in addition to instituting citation proceedings, it found no case law or equitable principles compelling the court to rule that the plaintiff's liens were invalid in the absence of the delivery of a writ of execution. Thus, the case holds that a citation to discover assets proceeding creates a lien upon intangible personal property of a judgment debtor even in the absence of the delivery of a writ of execution to the sheriff.

The Illinois Appellate Court for the First District once again addressed the question in *In re Marriage of Rochford*, 91 Ill.App.3d 769, 46 Ill.Dec. 943, 414 N.E.2d 1096 (1st Dist. 1980). Although the facts of the case are somewhat involved, the basic scenario was as follows: Sharon Rochford sought an order from the circuit court requiring her ex-husband to sell his seat on the Chicago Mercantile Exchange in order to satisfy his arrearages in child support and an IRS levy on the marital home. The court entered a temporary restraining order and, effective February 8, 1979, appointed a sequestrator to arrange a sale of the mercantile exchange seat.

On January 30, 1979, one Laser confessed judgment on a demand promissory note signed by the ex-husband. On February 5, 1979, prior to the appointment of the sequestrator, Laser delivered a writ of execution to the sheriff, seeking satisfaction of his judgment. Laser contended that he was entitled to be satisfied from the proceeds of the sale prior to Mrs. Rochford.

The court found that a seat on the exchange was not a "good or chattel" subject to execution under Ill.Rev.Stat. ch. 77 § 10. *Id.* at 775. In distinguishing between the ability to sequester the "personal estate" of a debtor as opposed to executing on the "goods and chattels" of a debtor, the court stated that the term "goods and chattels" is not synonymous with "personal estate." *Id.*

There are two classes of personal property, tangible and intangible, and our courts have distinguished between them in determining whether a given type of personal property is subject to the lien of a judgment creditor. Whatever personal property may be described as tangible, *i.e.* property having real physical existence, comes within the definition of 'goods & chattels' as those terms are used in section 10. A lien on that type of personalty is created by the delivery of a writ of execution to the sheriff. Whatever personal property may be described as intangible, *i.e.*, property not having physical existence such as claims, interests and rights, is not a good or chattel. A lien on intangible property may be created only through the filing of a creditor's bill (Ill. Rev.Stat.1977, ch. 110, par. 399) or by instituting proceedings to discover assets. (Ill.Rev.Stat.1977, ch. 110, par. 73; *Crawford v. Schmitz*, 139 Ill. 564, 569 [29 N.E. 40] (1891); *Mid-West National Bank v. Metcoff*, 23 Ill.App.3d 607, 611 [319 N.E.2d 336] (1974); *Bank of Broadway v. Goldblatt*, 103 Ill.App.2d 243, 247 [243 N.E.2d 501] (1968). From the authorities cited it would appear that intangible personalty may be subject to sequestration but not to execution by a judgment lien creditor.

*Id.*

The court further held that since the membership could not be considered a

"good or chattel," it was not subject to execution and thus Laser was merely a judgment creditor, not a judgment *lien* creditor. *Id.* at 776. Despite these conclusions, the court held that Laser could have perfected his judgment by instituting citation to discover assets proceedings.

> Section 73 authorizes a judgment creditor to prosecute supplementary proceedings for the purpose of examining the judgment debtor to discover nonexempt assets of the debtor and of compelling the application of nonexempt assets discovered toward the payment of the amount due under the judgment. The proceeding is commenced by serving upon the judgment debtor a citation issued by the clerk of the circuit court. When nonexempt assets of the judgment debtor are discovered, the court may by appropriate order compel the judgment debtor to deliver up to be applied in satisfaction of the judgment, in whole or in part, money, choses in action, property or effects in his possession or control, capable of delivery and to which his title or right of possession is not substantially disputed. As a judgment creditor of Rochford, Laser could have created a lien against the membership on the exchange if he had instituted proceedings to discover Rochford's assets under section 73.

*Id.* at 777.

From the foregoing discussion, it is apparent that the authorities conflict on the question of whether a lien can be created by instituting citation proceedings. Indeed, the *Rochford* case holds that a lien on intangible personal property is not created by delivery of a writ of execution to the sheriff, but rather by the institution of citation proceedings. The district court in *Asher* held that a lien was created on intangible personal property *only* by delivering a writ of execution to the sheriff. In affirming the district court, the Seventh Circuit held that a lien arises on intangible property either by delivering a writ of execution to the sheriff or by instituting citation proceedings. To say the least, this area of law in Illinois is muddled. One author has stated that the only legal disadvantage of pro-

ceeding by way of citation is the uncertainty of whether a lien arises. Comment, *Enforcement of Creditors' Rights*, 1975 U.Ill. L.F. 424, 434.

A most recent article in the Illinois Bar Journal addresses the issue of whether a supplementary proceeding pursuant to Ill. Rev.Stat. ch. 110 § 73 creates a lien on property of the debtor. In *A Comparison of Supplementary Proceedings and Creditor's Bills*, 70 IBJ 694 (July 1982), the author indicates that an order issued pursuant to Ill.Rev.Stat. ch. 110 § 73(2), which compels the person cited to deliver up the assets discovered, should create a lien on such property. However, an order issued pursuant to Ill.Rev.Stat. ch. 110 § 73(4), restraining or enjoining a party from transferring or disposing of property subject to the supplemental proceedings merely acts to maintain the status quo while a creditor pursues discovery of the debtor's assets. Accordingly, a lien should not be imposed upon property which has been subjected only to a § 73(4) restraining order. *Id.* at 696.

The citation proceedings instituted by First State Bank involved only a § 73(4) form order sent by the circuit clerk's office. No order ever issued directing General Telephone to deliver up the property discovered. Apparently then, a lien never was created by First State Bank on the property held by General Telephone and owed to the debtor, even assuming First State Bank had obtained a judgment upon which execution could issue.

Having considered the purpose of the citation proceeding, together with the advantages inherent therein (see *Comment, supra* at 439) this court concludes that a citation proceeding should give rise to a lien on intangible personal property. However, such liens, rather than being judicially created, ought to be legislatively designated. The Illinois legislature should revise the citation statute to clarify whether that procedure indeed gives rise to a lien on personal property and, if so, whether institution of proceedings is sufficient as opposed to a final order of the court assigning property

to the judgment creditor. *Accord* Comment, *supra* at 439.

In any event, having determined that First State Bank of Maple Park did not obtain a final judgment, the court now turns to the priority to be accorded to the remaining liens. The question before the court is whether the tax liens of the United States take priority over the claims of the other parties in this case. Tax liens in the amount of $51,182.04 arose when the government served Charles Robinson, d/b/a C & R Cable Splicing Contractor, with notice and demand for amounts owing for unpaid federal withholding and FICA tax liabilities for the third and fourth quarters of 1978. The government assessed the tax deficiency in the amount of $21,036.25 on July 27, 1978, and in the amount of $30,-145.79 on December 18, 1978. Under 26 U.S.C. § 6321, when a person liable to pay taxes refuses to do so after demand, the amount, including *inter alia*, interest and penalties, becomes a lien in favor of the United States upon all property and rights to property belonging to the delinquent taxpayer.

■ As the government correctly points out, when there are competing claims to a delinquent taxpayer's property between a federal tax lien and state-created liens, the question of priority is governed by federal law. *Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960). A state-created lien must be choate in order to compete against a federal tax lien. *United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). In order to be choate, a lien which is otherwise perfected under state law must specifically identify (1) the lienor, (2) the property subject to the lien, and (3) the amount of the lien. *Id.* at 84, 74 S.Ct. at 369. *See also Asher v. United States*, 570 F.2d 682, 683 n.3 (7th Cir. 1978). Moreover, an unperfected "inchoate" state lien is inferior to unfiled federal tax liens which arise before or after the date of the state-created lien. *United States v. Pioneer American Insurance Co.*, 374 U.S. 84, 88, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963).

■ However, as between a perfected choate state lien and a federal tax lien, the priority rule is "first in time, first in right." *United States v. New Britain*, 347 U.S. at 87, 74 S.Ct. at 371. Additionally, 26 U.S.C. § 6323(a) provides that a lien imposed by § 6321 is not valid against any purchaser, holder of a security interest, mechanic's lienor or judgment lien creditor until notice is filed in the office designated by the state or county for such filings. *See* 26 U.S.C. § 6323(f). Thus, a judgment lien creditor or mechanic's lienor who perfects his choate lien prior to the filing of notice by the United States would have a prior claim to the fund. The United States filed its notice of tax liens in the McLean County recorder's office on December 12, 1978, and February 20, 1979, respectively.

■ The garnishment statute, Ill.Rev. Stat. ch. 62 § 39, provides that a judgment becomes a lien on the property held by the garnishee at the time of service of the garnishment summons. J.A.W. Contractor, after having obtained a judgment, served its garnishment summons on General Telephone on September 6, 1978. There being no dispute as to the choateness of that lien, and that lien having arisen prior to the filing of notice by the United States, it shall be accorded first priority in the amount of $2,815.30.

■ Roland Machinery Co. makes a claim upon the interpleader fund by virtue of a mechanic's lien asserted on materials furnished to Charles Robinson. A notice of claim for lien was served on General Telephone and Charles Robinson on October 20, 1978. However, the notice was never filed with the county recorder's office nor was suit for enforcement of the lien brought within four months of completion of the work, as required by statute. Ill.Rev.Stat. ch. 82 § 7. Accordingly, any lien obtained by Roland must be subordinated to the other liens which have been properly perfected.

L. W. Williams Contractor, Inc. also asserts a mechanic's lien which arose on November 9, 1978. However, L. W. Williams admits that its lien is subordinate to that of

the United States and, as will be seen below, when the spoils are divided among those with prior perfected liens, there is none left to satisfy L.W.'s claim.

■■■ McLean County Bank, after having obtained a judgment, issued a garnishment summons to General Telephone on January 10, 1979. As noted above, the United States perfected its lien as to choate, perfected judgment lien creditors on December 12, 1978, as to the amount of $21,036.25. Since this lien was perfected prior to McLean County Bank's service of garnishment summons, it takes priority thereover. However, the United States did not perfect its lien as to the $30,145.79 until after McLean County Bank perfected its choate lien and, thus, the government's second lien is subordinate to that of McLean County Bank.

Lastly, the parties agreed at oral argument that the attorney for General Telephone would be compensated for fees of $500 and $103 in costs.

■■■ One remaining issue is whether General Telephone is obligated to pay statutory interest on the fund from January 10, 1979, the date the interpleader action was commenced in state court to February 25, 1981, the date the funds were deposited into the registry of this court. Certain of the claimants rely on Ill.Rev.Stat. ch. 74 § 2 as support for their position that General Telephone should be required to pay statutory interest at the rate of 5% per annum for the above-stated period. As McLean County Bank points out, the philosophy behind the interest statute is to prevent individuals who acknowledge they owe a sum certain from retaining the benefits of the money without paying the sum to the debtor. Although General Telephone had a right to interplead the claimants here, they retained the use and benefits of the money for over two years during the pendency of the state and federal proceedings. A case directly on point is *Elgin, Joliet & Eastern Railway Co. v. Northwestern National Bank of Chicago*, 165 Ill.App. 35 (1911). The court stated there that "the rule is that the custodian of the fund, complaining in the interpleader cause, will, *unless he should have paid the*

*money into court*, be decreed to pay it to the rightful claimant when ascertained, *with interest* thereon through the whole interpleader period, during which he has presumably enjoyed its beneficial use." *Id.* at 41. Accordingly, General Telephone is directed to pay interest on the fund at 5% per annum for the period from January 10, 1979 to February 25, 1981.

In summary, the court's ruling is as follows: Counsel for General Telephone shall be compensated first out of the fund as agreed by the parties. J.A.W. Contractor shall be compensated for its claim next. The Government's claim in the amount of $21,036.25 shall be satisfied next in priority, to be followed by payment of the amount due to McLean County Bank. The Government's tax lien in the amount of $30,145.79 will next be satisfied to the extent any amount remains in the fund. General Telephone shall pay statutory interest in the amount of 5% per annum on the amount in the fund for the period January 10, 1979, to February 25, 1981. This interest and the interest which has accrued since the fund has been deposited with the court shall be shared proportionately by the claimants receiving payment out of the fund. The parties shall file an agreed statement of amounts to be paid to each, in accordance with this court's order, within thirty(30) days.